No. 32,607

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, etc., *Plaintiff*, v. JOSIAH GOOD, Administrator of the Estate of Ellen Doyle, Deceased, and GEORGE M. LINCOLN, Conservator of the Estate of Ellen Doyle, Deceased, *Defendants*.

·(49 P. 2d 633)

Opinion filed October 5, 1935.

*Clarence V. Beck,* attorney general, and *Harold M. Hauser,* assistant attorney general, for the plaintiff.

*Braden C. Johnston,* of Marion, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an action for a writ of mandamus. The plaintiff seeks a writ commanding the administrator of the estate of

Ellen Doyle to take charge of the real estate left by her. The facts are all contained in the pleadings.

On March 12, 1935, Ellen Doyle died intestate in Marion county, Kansas. At the time of her death she was seized of a large amount of property, both real and personal. The circumstances are such there is a question whether she left any known heirs.

At the time this action was begun a number of people had filed claims in the probate court asking that they be decreed to be heirs. Soon after the death of Miss Doyle the defendant, Josiah Good, was appointed administrator of the estate. He qualified and took control of the personal property.

On March 25, 1935, the state, by an appropriate action in the district court, procured the appointment of a conservator of the real estate owned by Miss Doyle when she died. This conservator qualified and took charge of the real estate. This action was taken under the authority of *McVeigh v. First Trust Co.*, 140 Kan. 79, 88, 34 P. 2d 571. In that case the court held that where it was not necessary to sell real estate of which a deceased died seized to pay debts, the administrator has nothing to do with it and it passed direct to the heirs. That was a case where there was a question whether the deceased died without heirs. The court said the district court should appoint a conservator to take charge of and preserve the real estate.

The court construed the provisions of R. S. 22-933 to 22-935 and R. S. 22-1201 to 22-1206. Sections R. S. 22-933 to 22-935 provide that when a person dies without heirs and intestate the superintendent of schools of the county shall file a petition in probate court calling the matter to the attention of that court. The probate court shall order the administrator to sell the real estate. This action may be begun three years from the date of the appointment of an administrator for the estate. The administrator shall pay the proceeds of the sale to the county treasurer for the benefit of the common schools of the state. They provide further that if at any time within twenty-one years after the date of the payment of the money to the county treasurer an heir should appear and prove heirship satisfactorily to the probate court, the state treasurer shall pay the money to the claimant.

Sections R. S. 22-1201 to 22-1206 provide that when the state superintendent or the county superintendent of public instruction shall learn of the existence of an estate of a person who has died without heirs he shall notify the county attorney and the attorney general.

The probate judges are charged with the duty of giving a like notice to the same officials. It is made the duty of the county attorney to scrutinize such estates and to prevent the spoliation of them by fraudulent claims and to conserve all such estates for the benefit of the common schools of the state. Provision is made for an allowance out of the estate to defray the reasonable expenses of the county attorney in making inquiries and in the examination of witnesses touching the rights of claimants to the estate. It is declared unlawful for the county attorney or attorney general to be the attorney for any pretended heir or devisee not residing in the county where the estate is located, and it is made the duty of the attorney general to see that the act is obeyed, and when in the opinion of the governor the interests of the public require it the attorney general may supersede the county attorney.

The sections which have just been described were all in effect on March 12, 1935, when Miss Doyle died. It is also the settled law of this state that the real estate of a person dying intestate passes direct to his heirs; that in such a case one claiming to be an heir might bring an action in the district court to establish his title and that a probate court has no jurisdiction to try the title to real estate. See *McVeigh v. First Trust Co.*, supra. The actions that have been heretofore described were taken pursuant to these provisions.

On May 15, 1935, chapter 168 of the Laws of 1935 was published and became effective. It repealed all the sections that have been described that had to do with the disposition of the estate of a person who died intestate and without heirs. It set up a new manner in which such estates should be handled.

The first section of this chapter provides for the appointment of an administrator and for notice to the county attorney and attorney general. The section ends with the following provision:

"The probate court shall have exclusive original jurisdiction of all questions, legal or equitable, arising in the administration and distribution of such an estate."

The second section provides for the bond of the administrator, for the publication of a notice, and that the administrator shall take into his possession all the property left by deceased, both real and personal. The section further provides that the personal property be converted into cash as expeditiously as possible and directs that the administrator collect the rents and other income from the real property. The section contains the following provision:

"If no one appears to claim as an heir, devisee or legatee of the decedent within one year after the appointment of the administrator the court shall direct the real property of the decedent to be sold for cash."

The next section provides that the net proceeds of the estate shall be paid to the state treasurer and become a part of the state school fund. It provides that this money shall be kept as a temporary fund until ten years after it shall have been received, at which time it shall be covered into the perpetual school fund of the state, provided that no one in the meantime has established his right to it as an heir, devisee or legatee of the decedent.

The fourth section provides that one claiming the estate as heir of decedent shall present his claim to the probate court within ten years after the administrator was appointed, or be barred. The section then provides that a party aggrieved by the ruling of the court may appeal to the district court as other appeals are taken from the probate court and that the appeal shall be tried *de novo* in the district court. Provision is then made for appeal to the supreme court.

The fifth section provides that if the estate has been delivered to one or more who claimed as an heir of decedent and whose claim was established, and later, but within ten years after the appointment of the administrator, someone else establishes a claim, neither the state nor the school fund commission shall be liable to such claimants, but the party in whose favor the later claim was established shall have a cause of action against the party to whom such payment was made.

And the sixth section provides that the state shall be a party and entitled to be heard in all actions having to do with the distribution of the estate. It provides that the county attorney shall represent the state and shall be the legal representative of the administrator; that he shall protect the estate for the school fund and diligently defend against all claims not clearly meritorious. It further provides that expenses incurred by the county attorney in representing the state in such actions shall be paid by the county as are other expenses incident to the conduct of the office of county attorney. The section then provides that the attorney general may supersede the county attorney and that expenses incurred by him shall be paid from the funds provided for the expenses of the attorney general's office and that in no event shall attorney fees be allowed or paid from the estate to any one representing the state or the administrator.

As soon as this chapter became effective the question arose as to whether it applied to the estate of Ellen Doyle, since her estate was already being administered when this chapter became effective.

The state filed a motion in the action that was begun in district court in which the conservator was appointed, stating that chapter 168 of the Laws of 1935 was effective and applied to the Doyle estate and asking that the conservator be discharged and ordered to turn over the real estate to the administrator. This motion was sustained by the district court. The administrator, however, refused to take possession of the real estate. He alleged in his answer filed in this action that he thus refused to take charge of this real estate because he believed that chapter 168 of the Laws of 1935 had no application to him as administrator of the Doyle estate and that it was his duty to proceed with the administration of the estate under the provisions of law that existed prior to the enactment of this chapter.

It will be seen that the issues are thus framed so as to secure a declaratory judgment as to which statute applies to this estate. If this estate should be administered under the law as it existed prior to the enactment of chapter 168 of the Laws of 1935, then the writ should be denied. If chapter 168 controls the administration, the writ should be allowed.

The argument of defendants is that to hold that chapter 168 applies would give a retroactive effect to it. Plaintiff admits this but argues that this chapter only affects procedure and should be construed as retroactive and given the effect of controlling the administration of the Doyle estate.

The general rule is that statutes will be held to operate prospectively and not retroactively unless the intention of the legislature to make the statute operate retroactively clearly appears.

In *Douglas County v. Woodward,* 73 Kan. 238, 84 Pac. 1028, the court construed an enactment which gave a judge authority to sign a case made within one year of the making of any final order notwithstanding that the term of office of the judge might have expired after the rendition of the judgment. Prior to the enactment of that statute the law had been that the authority of the judge to settle a case made ceased with the expiration of his term of office. A district judge acted on a case made where the order from which the appeal was taken had been made before the enactment of the above statute. This court held that the court had no authority to

do this because the act operated prospectively and not retrospectively. The court held:

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (Syl. ¶ 1.)

Some language of the court is helpful here:

"In the absence of any constitutional inhibition the legislature has the power to enact retrospective statutes in certain cases, provided such laws do not interfere with vested rights. Whether vested rights are affected by such laws it is the province of the courts to determine. (Potter's Dwarris, Stat. & Const. 166.) The rule is that they are not to be allowed a retroactive effect unless such intention upon the part of the legislature is so clearly expressed that no other construction can be fairly given." (p. 240.)

It will be seen that in that case the court followed the rule that the question of whether the statute dealt with vested rights was not necessarily controlling. The legislature has no authority to enact a law which operates to affect vested rights, and an act will not be given a retrospective effect even though it does not affect vested rights unless the intention of the legislature to give it this effect unequivocally appears. To the same effect is the holding of this court in *Almquist v. Johnson,* 130 Kan. 417, 286 Pac. 200. There the legislature had enacted a statute which placed a limitation on the time within which a claim should be made to the receiver of a failed bank. The court held the statute did not apply to a claim where the bank had failed before the enactment of the statute. The syllabus reads:

"Chapter 88 of the Laws of 1927 considered, and held that its several provisions and amendments indicate that it was not the intention of the legislature that its new provisions should have a retroactive application, and particularly that the nonclaim provision in section 5 prescribing that 'All claims of depositors and other creditors must be filed with the receiver within one year after the date of his appointment, and if not so filed such claims shall be barred from participation in the estate of such bank,' should not apply to claims that had accrued against a bank in the hands of a receiver appointed prior to the time the new law became effective."

See, also, *International Mortgage Trust Co. v. Henry,* 139 Kan. 154, 30 P. 2d 311.

The statute under consideration contains no provision that it should apply to estates in process of administration at the time of its enactment. There is no language in the act from which it might be said that the legislature unequivocally expressed such an inten-

tion. The law is that the statute will not be given a retrospective effect unless the intention so to do clearly appears. An examination of this act convinces us that rather than such an intention clearly appearing, the fact is that an intention not to give the act any such effect clearly appears.

In the first place the old statute allows three years for the filing of the action to sell the land after the letters of administration are granted. The new statute provides that the court shall direct the real property to be sold for cash after the lapse of one year. It happens that in the present case only a few days elapsed after the appointment of the administrator, but in case it should be held the new statute applies to an estate in process of administration, then what about estates where more than one year has elapsed? Would the provision of the new statute require that the real estate be sold immediately? A construction that the old statute applies would do away with this troublesome question.

In the second place the old statute gives one claiming the estate as an heir twenty-one years after the payment of the proceeds of the estate to the county treasurer to appear and prove his rights and claim his share of the estate. The new statute reduces this time to ten years. Suppose the money was paid about nine years and a half ago. If the new statute is held to apply, then some claimant might have been barred within six months after the passage of chapter 168. Passing by the question of whether this would not be such a provision as should be held to deprive one of a vested right, it certainly is an interpretation that should not be given the statute unless the intention to so provide clearly appears.

In the next place, under the old statute a claimant had a right to bring an action in ejectment in district court for the land any time before the administrator was ordered to sell it under the provisions of R. S. 22-934. Under the terms of the new statute the probate court is given exclusive jurisdiction of all questions, legal or equitable, arising in the administration of the estate. Here is a radical departure from the old order. What shall be done about estates where causes of action were pending in district court to determine heirship? The failure of the legislature to provide for this condition is persuasive to us that it was not the intention of the legislature to have the new statute apply to estates in the process of administration at the time of its enactment.

And, furthermore, the statute before the enactment of chapter

168 provided that personal property left by a deceased passed to the administrator, while the real property passed direct to the heirs. Chapter 168 provides that all possession and control of property, both real and personal, passes to the administrator for purposes of administration.

On the death of Miss Doyle, under the law as it existed prior to the enactment of chapter 168, title to the real property of which she died seized passed to her heirs, subject only to their obligation of proving their heirship.

In case this court should hold that the new statute applies to estates in process of administration, what should be said of the title to the real estate which has already vested in some one? The matter is not dealt with in the act, and it is fair to assume that if the legislature had intended such an effect some provision for it would have been made in the act. All these matters lead us to the conclusion that not only did the legislature fail to unequivocally express the intention that chapter 168 of the Laws of 1935 should have a retroactive effect, but the context of the act indicates clearly the opposite intention.

This conclusion is strengthened by a consideration of R. S. 77-201 (1). That paragraph reads as follows:

"The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

The right of any heir of Miss Doyle to bring an action in ejectment to gain possession and prove title to any real estate left by her accrued at the time of her death regardless of the remoteness of the relationship or the difficulty of proving heirship.

It follows that the estate of Ellen Doyle should be administered under the law as it existed prior to the enactment of chapter 168 of the Laws of 1935.

Since we have reached this conclusion the writ will be denied. It is so ordered.