No. 33,015

In re Claim of HAROLD HAUSER, *Appellant*, v. ESTATE OF ELLEN DOYLE, Deceased, *Appellee*.

No. 33,016

In re Claim of A. M. EBRIGHT, *Appellant*, v. ESTATE OF ELLEN DOYLE, Deceased, *Appellee*.

(56 P. 2d 1217)

Opinion filed April 25, 1936.

*Clarence V. Beck,* attorney general, and *Forrest Smythe,* assistant attorney general, for the appellants; Harold Hauser, *pro se.*

*Braden C. Johnston, W. H. Carpenter* and *John E. Wheeler,* all of Marion, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal involves the allowance of expenses under R. S. 22-1204.

On March 12, 1935, Ellen Doyle, of Marion county, Kansas, died intestate, leaving no known heirs. Josiah Good, of that county, was appointed administrator of her estate by the probate court of

Marion county, and duly qualified as such. Decedent's personal estate was appraised at $445,015.17 and her real estate at $22,925. As might be expected, many persons, either singly or in groups, have filed petitions in the probate court alleging heirship and consequent rights to the estate.

In 1935 the statutes with reference to administration of estates of intestates dying without known heirs were amended and revised by the Laws of 1935, chapter 168, effective May 15, 1935. In *State, ex rel., v. Good,* decided October 5, 1935, and reported in 142 Kan. 434, 49 P. 2d 633, and involving this same estate, it was held the estate should be administered under the law as it existed prior to the enactment of the Laws of 1935, chapter 138.

Under R. S. 22-1201 *et seq.,* it was the duty of the probate judge to notify the county attorney and the attorney general of the existence of an estate such as that described above, and under R. S. 22-1206 the attorney general could supersede the county attorney and perform his duties in the prosecution or defense of the interests of the common schools under the act. R. S. 22-933 to 22-935, inclusive, made provision for disposal of real estate and proceeds arising therefrom.

The attorney general superseded the county attorney. On July 18 and 19, 1935, a hearing was had in the probate court with respect to the claims of Henry Young and six others that they were heirs. At this hearing the attorney general was represented by two of his assistants. According to the stipulation of facts dictated into the record on a subsequent hearing in the district court, this hearing was continued in order to permit the administrator of the estate and the attorney general to investigate the validity of the claims, and it appears the hearing had not been concluded when the present controversy was heard in the district court.

The attorney general appointed Harold M. Hauser and A. M. Ebright as special assistants for the purpose of making the investigation. We are not now concerned with that investigation further than that Mr. Hauser filed in the probate court a claim for expenses in the sum of $204.63 and Mr. Ebright filed a similar claim for $136.85. A hearing was had on these claims, the administrator, the claimants to the estate, Henry Young *et al.,* and Messrs. Hauser and Ebright being present or represented by counsel. In orders with reference to each, the probate court held:

"It is the judgment of the court after hearing said application, that the

provisions of the statutes of the state of Kansas relating to the allowance of such expenses is unconstitutional, contrary to the constitution of the state of Kansas, and the constitution of the United States, and said application is hereby denied."

An appeal was taken to the district court which heard evidence thereon, the parties being present or represented as in the probate court. The district court, in deciding the matter, said:

"Mr. Hauser, in these two cases relating to the Doyle estate, I question very seriously whether or not it would be constitutional to do that. I think it clearly appears from the 'language of this statute that that is a matter of discretion of the probate court, understand, as to whether or not they (expense claims) should be allowed. Of course all of that is subject to review. I don't think there is any abuse of discretion on the part of the probate court in disallowing the claim. That will be the order. The claims are disallowed."

The journal entries stated:

"The court, having heard said evidence, oral arguments and duly considered the briefs filed herein, on the 19th day of February, 1936, being a regular day of the February, 1936, term of said court, finds against the claimant and affirms the decision of the probate court of Marion county, Kansas, and denies said claim."

The motions of Hauser and Ebright for a new trial were denied, and they appeal. The matter will be discussed as though there were but one claimant.

Strictly speaking, in view of the judgment of the probate court, and its affirmance and approval by the district court, the only question presented by this appeal is the constitutionality of the Laws of 1913, chapter 273, which appears as R. S. 22-1201 to 22-1206, inclusive. In the brief of the claimants to the estate, Henry Young *et al.*, is an argument against constitutionality, which has been adopted by the administrator in his brief, and which argument, we assume, is that made in the two lower courts, and which forms the basis for their decisions. Some other matters argued will also be mentioned.

It may first be noted that prior to the enactment of the Laws of 1935, chapter 168, if a person died intestate and without heirs, his property eventually went to the state permanent school fund, provision being made for payment to the rightful heir within the time stipulated. From this, appellees argue the state of Kansas is a claimant, and is to be treated as a person and as a citizen of the state of Kansas. It must be remembered, however, that this state has always had statutes regulating the descent of property of an

intestate. It is only failure of some person to prove heirship within the terms of those statutes that permits the property of one dying intestate and without heirs, to be ultimately appropriated, not to the state of Kansas generally, but to its permanent school fund. The state has the power to regulate the descent of property, it can and does specify the shares going to widow and children, it has power to alter those shares; it has provided for the descent of property of one who dies unmarried and without issue, and the conditions following if one or both of his parents be dead. It could alter these provisions by legislative act at any time, and it could, as perhaps it should, specify the degree of consanguinity necessary that anyone take as an heir at law. It has provided a course of procedure for the collection, conservation and care of property of an intestate that it may ultimately reach the parties entitled thereto under the above statutes, and there is no doubt of its power to provide that in the event a person dies intestate, leaving no heirs, the property should go to the state permanent school fund. It stands, to a certain extent, at least, as *"parens patriae"* in seeing that the property of every decedent, whether by will or descent, reaches those entitled thereto, either as legatee, devisee, heir at law or creditor, and to that end it has and maintains courts for settling all disputes as to such property, and in the administration of each estate, under provision of statute, not only are court costs paid out of the corpus of the estate, but allowances are made to executors or administrators for their services and expenses. In addition, the national government, under the estates tax law, and the state, under the inheritance tax law, each may take a part of the estate and appropriate it to its own use.

Nothing in the record before us indicates in what manner or for what reason either the probate court or the district court concluded the statutes assailed violated any provision of either the federal or state constitution. We shall therefore take up the various provisions of each constitution under which appellees assert the statute is unconstitutional. Appellees' contention is that the state is a claimant; that the statute (R. S. 22-1204) permits an allowance out of the assets of the estate to the county attorney, who represents the state as a claimant, and that such an allowance is not made to any other claimant, and therefore discrimination results in violation of article IV, section 2, clause 1, of the United States constitution, pertaining to privileges and immunities of citizens in the several states and the fourteenth amendment to the United States constitu-

tion pertaining to denial by the state to any person within its jurisdiction the equal protection of its laws. We cannot agree. In addition to what has been said, it is our judgment that the statute making it the duty of the probate court to notify the couny attorney, whose duty it is to investigate and scrutinize the claims of claimants to the estate to prevent spoliation of the estate by fraudulent claimants and to conserve the estate means more than a very literal reading of the statutory language may indicate. What the legislature intended was that where an estate of a deceased person was being administered and the heirs, or pretended heirs, are unknown to the probate court, it should notify the county attorney in order that the estate might not be spoliated or dissipated but might be preserved for the rightful owner, either an heir or the state for its common school fund. The fact that thereafter some person or persons might claim to be heirs did not oust the county attorney. It is conceded in the case at bar that in addition to the claimants to the estate involved in this appeal, there are many other claimants to the estate. Whether any or all of them may succeed in establishing their claims of heirship remains to be determined. In the meantime, the county attorney has a positive statutory duty to see that no fraudulent claimants to the estate are permitted to spoliate the estate to the detriment of the true heirs, if any be found so to be, failing which the property of the estate will escheat to the state for the benefit of its common schools. In connection with his duties, the probate court, in its discretion, may make an allowance out of the estate to defray his reasonable expenses. So construed, the statute does not discriminate between the claimants to the estate.

Neither can it be said that the allowance of a claim for such expenses and subsequent payment thereof is a taking of property without due process of law or a taking of private property for public use without just compensation, under the fifth amendment to the United States constitution. At the time the claims in question were filed, due notice was given to the administrator, the person designated by our statutes and who represents all persons so far as administration of assets is concerned. Neither would payment of an allowance be the taking of private property for public use, any more than the allowance to the administrator for his services and expenses would be. The contention under the fifth amendment is not good.

And finally, it is argued that the statute violates section 17 of

the bill of rights of our state constitution in that distinction is made between citizens of Kansas and citizens of other states in reference to the descent of property. This argument presupposes the state is a claimant and a citizen of itself, and that the pretended or unknown claimants to the estate are in fact heirs and in fact nonresidents of Kansas. We have held the state, under the statutes involved, is not a claimant. We now hold that it is not a citizen of itself, and we are unable to read into the statute any attempt to discriminate between the claimants to the estates based on residence or nonresidence in Kansas, or based on their being citizens of this or any other state. If it should develop finally there are two heirs, and two only, one a resident of Kansas and one a resident of another state, each, depending on his relationship to the decedent, will receive equal treatment. The statute does not violate the above section of our bill of rights.

We do not find the statutes assailed unconstitutional for any of the reasons assigned.

It is further argued that even though the county attorney may be entitled to an allowance for expenses, the provision for such allowance is personal to him and does not avail the attorney general in the event he supersedes the county attorney, and in connection therewith it is argued the county attorney is not supplied with any expense account or contingent fund, whereas the attorney general is, and that the estate, if finally so determined, goes to the state and not to the county, and there is good reason why the county attorney should be paid expenses out of the assets of the estate which reason does not apply to the attorney general. However persuasive the argument may be, the statute authorizing the attorney general to supersede the county attorney makes no such provision, although the new act (Laws 1935, ch. 168) does.

The fact the new act provides for payment of expenses to the county attorney, or the attorney general, from different sources, leads to a conclusion that the old act contemplated they should be paid from the same source, there being no statement therein to the contrary. In our opinion the statute authorizing the attorney general to take charge (R. S. 22-1206) is sufficiently broad that it must be held, where the attorney general does supersede the county attorney he is entitled to the allowance for expenses.

It is further argued the attorney general may not appoint, as special assistants to aid in making the inquiries and examinations

incumbent under the statute, attorneys other than those specifically provided for in the statutes, and that neither Hauser nor Ebright are in such class. The present controversy did not arise on that question, and it will not be considered further.

It is also argued that the allowance of reasonable expenses is discretionary with the probate court. That is the language of the statute, and, as in all similar cases, it means a proper, as distinguished from an arbitrary, exercise of discretion. The district court states it did not think there was any abuse of discretion on the part of the probate court in disallowing the claims. The probate court, however, did exercise its discretion when it continued the hearing of July 18 and 19, 1935, to permit the administrator and the attorney general to investigate the validity of the claims presented. The only question, insofar as the attorney general is concerned, is what constitutes reasonable expenses. Insofar as the administrator is concerned, it is no concern of his who the true heirs may be, for under the facts of this case, and under the statutory provisions, the duty of preventing spoliation of the estate by fraudulent claimants thereto is on the county attorney or attorney general. The duty of the administrator is to collect the assets of the estate and administer them under the statutes and orders of the probate court, and ultimately distribute them to the persons found entitled. His allowance for services and attorney's fees is on account of that duty and cannot be predicated on his undertaking a duty cast on another official.

From the record before us it appears the hearing in the probate court of July 18 and 19, 1935, was continued for the purpose of permitting the attorney general to investigate validity of claims to the estate, and it is no longer open to question that what was done was done with knowledge and consent of the probate court about as far as it could be had and given in advance. The only question remaining is as to reasonableness of the amounts of the claims.

The judgment of the district court is reversed, and the cause remanded with instructions to set aside its order affirming the judgment of the probate court and to remand the cause to the probate court to hear the claims as to the reasonableness of the amounts claimed.