No. 33,763

CLARENCE V. BECK, Attorney General, *Appellant,* v. JOSIAH GOOD, Administrator of the Estate of Ellen Doyle, Deceased, et al., *Appellees.*

(77 P. 2d 968)

Opinion filed April 9, 1938. 

*Clarence V. Beck,* attorney general, *J. S. Parker,* assistant attorney general, and *A. M. Ebright,* of Wichita, for the appellant.

*W. H. Carpenter, W. R. Carpenter* and *John E. Wheeler,* all of Marion, for the appellees; *Braden C. Johnston,* of Marion, for the administrator.

The opinion of the court was delivered by

SMITH, J.: This was an application for the allowance of attorney fees out of an estate. The probate court denied the application. On appeal the district court denied it. Claimant appeals to this court.

On or about March 12, 1935, one Ellen Doyle died intestate a resident of Marion county, Kansas. She had no known heirs. On the date of her death she was seized of a large amount of property, both real and personal. On or about March 14, 1935, on a proper application an administrator for her estate was appointed. This administrator duly qualified and has been acting ever since. He has given bond in the amount of $407,000. Approximately eighty petitions have been filed in behalf of persons who claim to be heirs of Ellen. The matter is being adjudicated pursuant to the provisions of R. S. 22-1201 to 22-1206, also R. S. 22-933 to 22-935. (See *State, ex rel., v. Good,* 142 Kan. 434, 49 P. 2d 633.) If no person is adjudged to be an heir, then eventually the proceeds of the estate will be paid into the permanent school fund.

The above provisions placed the duty of looking after the interests of the permanent school fund upon the county attorney of the county of which deceased was a resident. Under the provisions of R. S. 22-1206 it was the duty of the attorney general to see that the act was enforced. Whenever in the opinion of the attorney general the public interests required it the attorney general might supersede the county attorney. Acting under the provisions of the above statute the attorney general superseded the county attorney in this case. The attorney general appointed Harold M. Hauser, A. M. Ebright and P. K. Smith as special assistants for the purpose of making the necessary investigation and to assist him and his regular assistants in looking after the litigation in-

volved. Early in the history of the litigation these lawyers appeared in their capacity as special assistants to the attorney general. Incidental to this appearance they each filed in the probate court claims for their out-of-pocket expenses. These claims were denied by the probate court and, on appeal, by the district court. The probate court refused to allow the claims upon the ground that the statute relied upon was unconstitutional. When the claims were appealed to this court, however, other questions were argued and passed upon as well. (See *Hauser v. Estate of Doyle,* 143 Kan. 719, 56 P. 2d 1217.) Among these was an argument that the provision for payment of expenses of the county attorney was personal to him and did not avail the attorney general in event he superseded the county attorney. This court upheld the constitutionality of the act, and held that where the attorney general superseded the county attorney his expenses should be paid from the estate.

On account of some motions that were filed the matter was considered again in *Hauser v. Estate of Doyle,* 144 Kan. 1, 56 P. 2d 1217. In this opinion the question of whether the expenses of assistants to the attorney general other than those specifically provided for in the statutes could be paid out of the estate was decided. This court said:

"We know of no reason why the attorney general may not exercise his judgment and discretion as to the manner and method in which he performs the duties obligatory on him under the statute. He may have concluded that it would be less expensive to have attorneys close at hand to represent his office rather than go personally or send assistants from Topeka. He and his regular assistants may have been fully engaged in looking after other of the state's business. Whatever may have been his reasons for designating the claimants as his assistants, it was not prohibited by statute; it was an act in the performance of his statutory duty. And, finally, it made no difference either to the administrator or the claimants to the estate what particular individual performed the duties." (p. 2.)

From the time of their appointment shortly after the death of Ellen Doyle until the present time Hauser and Ebright and Smith, the latter two being law partners, have conducted investigations, made inquiries and interviewed witnesses in different parts of the United States and on one occasion in Ireland. Incident to the inquiry in Ireland was the employment of one John Deagen, a reporter, and James Cody, a solicitor, both in Ireland. By July, 1937, Hauser, Ebright and Smith had performed considerable service for the attorney general in the litigation. The attorney general filed a

claim in the probate court for an allowance out of the assets of the estate for the amount of expenses incurred by him with reference to an item of a fee for services performed by Hauser, Ebright and Smith. The application was denied as to the fees of the above.

This order was sustained by the district court and is here on appeal. There is no question as to the reasonableness of the fee asked. The only question is as to the power of the probate court.

It is the theory of the attorney general that this should be treated as expenses of the attorney general. The theory of some of those who claim to be heirs and of the administrator is that this item is not properly expenses, but should be considered a fee for services performed by these lawyers. The statute pursuant to which this claim was made is R. S. 22-1204. That section is as follows:

"Whenever in the opinion of the probate judge the interests of the common schools so require, the probate court may make an allowance out of the estate to defray the reasonable expenses of the county attorney in making inquiries and in the examination of witnesses touching the rights of claimants to the estate of any such deceased person; but no expense to the estate shall be incurred under the provisions of this act where there are one or more heirs or devisees residing in the county, or where any one or more of the heirs or devisees are personally known to the probate judge."

It will be noted that the above section provides that "the probate court may make an allowance out of the estate to defray the reasonable expenses of the county attorney in making inquiries and in the examination of witnesses touching the rights of claimants to the estate of any such deceased person."

In this particular litigation we have already settled the question of whether the attorney general may supersede the county attorney. We have held, also, that having superseded the county attorney, the attorney general is authorized under his general powers to appoint assistants to handle the litigation other than the regular assistants authorized by statute, and to have their expenses, such as hotel bills, railroad fare, telephone tolls and similar items paid out of the estate. (See *Hauser v. Estate of Doyle,* supra.) It should be noted here that the probate court and the district court allowed the application of the attorney general as to the fee of Deagen and Cody, the Irish solicitor and reporter. All parties have treated these two items as "expenses" within the meaning of the statute quoted.

We should approach the consideration of this question with the fact established that Hauser, Ebright and Smith have performed services in excess of making inquiries and examining witnesses. As a matter of fact, they were in charge of the litigation.

Until the enactment of chapter 168 of the Laws of 1935, the estates of persons who died without known heirs and without a will were administered under the provisions of R. S. 22-1201 to 22-1206 and 22-933 to 22-935. These sections provided a comprehensive procedure for the collection, conservation and care of such estates. The entire matter of descents and distribution is governed by statute. The disposition to be made of an estate of one who dies intestate and without known heirs is entirely a matter of statutory provision. Thus we must look to the statutes for any disposition to be made of such an estate. It happens that the statute in question provides that such an estate shall go to the permanent school fund if no heir is found within a certain time.

This statute directs the attorney general to take certain steps in looking after an estate. It is the duty of that official to represent the school fund commission in any litigation just as it is his duty to represent any state agency which becomes involved in litigation. (See G. S. 1935, 75-701 to 75-710.) The statute under which this estate is being administered was enacted at the session of 1913. (Laws 1913, ch. 273.) At the same session the legislature provided for two assistant attorneys general at a salary of $3,000 and a contingent fund of $8,000 a year. Similar provision for assistants to the attorney general has been made at practically every session of the legislature since statehood. At various times provision has been made for fees being paid the attorney general and assistants for services performed in the enforcement of particular statutes. G. S. 1935, 21-918, provides that the district court may fix a fee for the attorney for the plaintiff where an injunction is granted against the maintaining of a gambling nuisance. To the same effect is G. S. 1935, 21-2131, as to liquor nuisances. See, also, G. S. 1935, 50-130, as to an attorney fee where an action is brought to enjoin the use of property for violation of the "bucket shop" act.

Chapter 313 of the Laws of 1913 provided that the attorney general and the assistant attorneys general should not receive any remuneration for the performance of their duties other than the salaries provided by law, and that fees received under the above statutes should be paid into the state treasury. The practical manner in which the situation was met was that the legislature provided in the appropriation act for the attorney general for 1915 that any money paid into the state treasury pursuant to the above statutes was appropriated for the use of the attorney general. (See Laws

1915, ch. 3.) Each appropriation act for the attorney general since that session has contained a similar provision. On occasions since, when the attorney general has concluded that some particular action under these statutes required the attention of lawyers other than those provided for by statute, he has appointed them and their fee has been paid out of the contingent fund provided for his office under the appropriation act, which had been enriched somewhat by the fees paid in. In connection with this it should be noted that at the session of the legislature for 1935 the appropriation for the attorney general's contingent fund was $17,500 for each year of the biennium. (See Laws 1935, ch. 5.) The session for 1937 provided $23,000 for this fund for each year. (See Laws 1937, ch. 6.) The same fund at the session for 1933 was $15,000 for each year. (See Laws 1933, ch. 5.) These appropriation acts are of interest to us here because they show that at the time this matter was pending in probate court the legislature increased the amount of money available to the attorney general for paying fees of this sort. We have nothing from which we can say the intention of the legislature was that the money should be used for that purpose, but the fact is more money was made available.

A situation somewhat analogous to this is covered by the holding of this court in *Warner v. Warner,* 83 Kan. 548, 112 Pac. 97, and the recent holding in *Galloway v. Wesley,* 146 Kan. 937, 73 P. 2d 1073. In the Warner case the guardian *ad litem* for a minor, who had represented the minor in a will contest, contended that his fee for representing the minor should have been charged as costs in the case and taxed against the plaintiff. This court held that guardians' fees were not, properly speaking, costs and could not be taxed against the losing party. In the Galloway case this court examined G. S. 1935, 60-408, which was a part of chapter 228 of the Laws of 1911, enacted after the decision in the Warner case. That section dealt with the appointment of guardians *ad litem* and contained the following provision:

"Such guardian *ad litem* shall receive such reasonable compensation as the court or judge before whom the action is pending, or tried, may order, the same to be taxed and collected as costs in the action."

On account of the above provision it was held that the fee of a lawyer who had been appointed guardian *ad litem* and had represented the minor in litigation could be charged as costs against the losing party. By analogy it appears that the above holding is

authority for a conclusion that in the absence of specific, clear provision in the statute attorney fees cannot be charged and taxed as costs against a party or against an estate where there is an estate involved in the litigation. The provision in R. S. 22-1204 with which we are concerned provides that the probate court may make an allowance out of the estate to defray the reasonable expenses of the attorney general in making inquiries and examining witnesses touching the rights of claimants. There is a close analogy between the provision as to costs in the Warner case and the use of the words "reasonable expenses" in the above statute.

The claimant makes an ingenious argument that since the probate court allowed the items of the fees of the Irish solicitor and the Irish reporter there is no reasonable distinction between them and the three Kansas lawyers whose fees are involved here. The fact is, however, that the services of the two Irishmen were incidental merely in the process of the entire investigation, while the services of the Kansas lawyers cover the entire field of the litigation. Their account which appears in the abstract shows services performed in many parts of this country and one trip to Ireland. This record does not disclose it, but all parties admit that since the hearing on these claims in the district court the probate court has conducted hearings and found certain claimants to be heirs of Ellen Doyle. The claimants in this action prepared that matter for trial on behalf of the permanent school fund. Claimants point out the provisions of section 6 of chapter 168 of the Laws of 1935. This section is now G. S. 1935, 22-1212. It provides, in part, as follows:

"Expenses of the attorney general incident or necessary to his conduct of the case shall be paid from the funds provided for the expenses of the attorney general's office. In no event shall attorneys' fees be allowed or paid from the estate to anyone representing the state or the administrator. The state, by its county attorney or attorney general, may institute and maintain any action or proceeding deemed necessary or proper in the handling of such an estate in any appropriate court or tribunal, or defend any such action or proceeding brought by any other party."

They argue from the fact that the above provision was enacted in 1935 that the legislature believed that prior to that enactment the probate court had authority to make an allowance out of the estate to pay the fees of assistant attorneys general representing the state. This does not follow, however, in this case. It will be seen that the provision deals first with the payment of the expenses of the attorney general and provides that these shall be paid from the

contingent fund of the attorney general. That provision is clearly an amendment of the former statute. The provision as to no attorney fees being paid out of the estate was enacted for the purpose of clarifying the entire situation.

We have reached the conclusion that the probate court and the trial court were correct in holding that the probate court did not have authority to allow out of the estate the claim of the attorney general for fees of assistant attorneys general appointed by him to assist in the making of inquiries and examining witnesses touching the rights of claimants to the estate.

Counsel for some of those claiming to be heirs of Ellen Doyle appeared at the hearing before the probate court, again in district court and on appeal to this court. The claimant argues that these parties had no right to be represented at the hearing on this matter since they had not been adjudged heirs at the time the hearing in the lower court occurred. This point is not good. By the time the case reached this court the parties represented by these attorneys had been adjudged to be heirs. If this adjudication should be upheld then these people do have an interest in seeing this estate be not depleted by having the fees of assistant attorneys general paid out. (See *Smith v. Smith,* 107 Kan. 628, 193 Pac. 314.)

The judgment of the trial court is affirmed.

SMITH, J. (dissenting): I do not agree with the conclusion reached by the majority. I desire to take the practical view of the entire matter. In my opinion the provision in the statute which gives the probate court power to make an allowance to the attorney general out of the estate to defray the reasonable expenses of the attorney general should be given the construction that as long as the arrangements made to retain counsel other than the assistant attorneys general, provided by statute, were reasonable, their fees should be paid out of the estate as an expense of the attorney general. The argument that the estate would thus be depleted does not appeal to me. These distant heirs would not receive anything at all were it not for this statute. The legislature, in my opinion, realized this and concluded that the entire expense of litigating the matter should be paid out of this estate rather than from some public source. Why should the public pay for conserving this estate? The duty of the attorney general is to see that all the available evidence as to the rights of different claimants is presented.

In a recent case of this sort in Sedgwick county the attorney gen-

eral was compelled to contest actions brought by people who claimed the entire estate under an alleged contract for services before the question of heirship was even considered by the probate court. (See *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665; also, *Heine v. First Trust Co.*, 141 Kan. 370, 41 P. 2d 767.)

Under this view it is difficult to see the injustice in causing all the expenses of the litigation to be paid out of the estate.

· What more natural conclusion is there than that the legislature intended that the estate should bear this expense?