No. 30,736.

CAROLINA GENSCHORCK, *Appellant*, v. ROSINA C. BLUMER et al., and OTTO HARZ, Administrator of the Estate of W. E. Wippel, Deceased, *Appellees*.

(14 P. 2d 722.)

Opinion filed October 8, 1932.

*Raymond E. Smith, W. W. Redmond* and *P. G. Wadham,* all of Marysville, for the appellant.

*R. L. Helvering,* of Marysville, and *Walter T. Griffin,* of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from a judgment of the district court affirming a judgment of the probate court determining succession to the estate of W. E. Wippel, who died intestate, leaving no widow or issue, and whose parents were dead. The estate was divided equally between a half sister of the decedent on his mother's side and cousins of the decedent on his father's side. The sister of the half blood appeals, claiming the entire estate.

The judgment of the district court was rendered on an agreed statement of facts, which follows:

"It is agreed by the parties hereto that one W. E. Wippel, also known as Ernest Wippel, died intestate in Marshall county, Kansas, on May 26, 1930. He was a bachelor, and left neither wife nor children, nor adopted children, nor issue of any deceased child, or deceased adopted child, him surviving, nor father nor mother, nor any brothers or sisters of the full blood or half blood, excepting only Carolina Strauss-Genschorck, his half sister, and sole surviving issue of his mother, Rosina Strauss-Wippel, deceased.

"W. E. Wippel, the intestate, during his lifetime was a citizen of the United States of America 'and resided in the state of Kansas, and was the child of Christian Wippel and Rosina Strauss-Wippel.

"Rosina Strauss-Wippel was twice married, her first husband being one Strauss, by whom she had three children, namely, Carl Strauss, Ernestine Strauss, and Carolina Strauss, who afterward intermarried with one Genschorck.

"After the death of Rosina Strauss' husband, she was married to Christian Wippel, the father of W. E. Wippel, the intestate. To them were born two children, namely, W. E. Wippel, the intestate, and August Wippel.

"August Wippel, full brother, and Carl Strauss and Ernestine Strauss, half brother and half sister of the intestate, each and all died intestate and without issue, prior to the death of W. E. Wippel, the intestate.

"At the time of the death of W. E. Wippel, the intestate, his parents were dead, and there was no issue surviving his father, Christian Wippel, and no issue surviving his mother, Rosina Strauss-Wippel, except Carolina Genschorck, the half sister of W. E. Wippel, the intestate.

"The grandparents of W. E. Wippel were Johann Wippel and —— Wippel, both of whom died long prior to W. E. Wippel, the intestate, then being subjects of the German Empire and residing in the Kingdom of Prussia. His paternal grandparents had two children, namely, Christian Wippel, father of W. E. Wippel, the intestate, and one Carl Wippel.

"Carl Wippel married a sister of Rosina Strauss-Wippel, and to him were born eight children, of whom three children died unmarried and without issue prior to the death of W. E. Wippel, the intestate. Carl Wippel was a naturalized citizen of the United States of America, and died before the intestate, W. E. Wippel, and left him surviving as his sole issue five children, namely, Rosina C. Blumer, Gottlieb Wippel, Robert P. Wippel, Ernestine Peterman, and Bertha Kessinger, all of whom reside in the United States of America, and who are the cousins of W. E. Wippel, the intestate.

"At the death of W. E. Wippel, the intestate, Carolina Genschorck, his half sister, was the sole surviving issue of his mother, Rosina Strauss-Wippel, deceased, and there was no surviving issue of his father, or children of a deceased child, natural or adopted.

"Carolina Genschorck is a citizen of the United States of America, and has lived in Kansas for more than fifty years last past.

"It is admitted that the question of alienage does not enter into this case, and no question of alienage is involved."

There is no common law of descent which prevails in this state. Who shall take the estate of an intestate and the shares which takers shall receive are prescribed by statute, and the question raised by the appeal is purely one of statutory interpretation.

The statute of descents and distributions contains the following provisions:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executors or administrators as

her property, in fee simple, upon the death of the husband, if she survives him; . . ." (R. S. 22-108.)

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children surviving him, and the living issue, if any, of prior deceased children; but such issue shall collectively inherit only that share to which their parent would have been entitled had he been living." (R. S. 22-118.)

"If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents." (R. S. 22-119.)

"If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue." (R. S. 22-120.)

"All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs. The estates of dower and by courtesy are abolished." (R. S. 22-127.)

"Children of the half blood shall inherit equally with children of the whole blood. Children of a deceased parent inherit in equal proportions the portion their father or mother would have inherited, if living." (R. S. 22-128.)

The original statute of descents and distributions, Acts of 1859, chapter 63 (Comp. L. 1862, ch. 80), which need not be described here, was completely revised in 1868 (Gen. Stat. 1868, ch. 33). R. S. 22-108, 22-119, 22-120, 22-127, and 22-128, are sections 8, 20, 21, 28, and 29, of the statute of 1868. R. S. 22-118 is section 18 of the statute of 1868, as amended by chapter 111 of the Laws of 1891. The original section, which was section 63 of the Laws of 1859, read as follows:

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children." (Gen. Stat. 1868, ch. 33, § 18.)

Section 18 of the statute of 1868 was followed by section 19, which read as follows:

"If any one of his children be dead, the heirs of such child shall inherit his share, in accordance with the rules herein prescribed, in the same manner as though such child had outlived his parent." (Gen. Stat. 1868, ch. 33, § 19.)

Section 19, which was section 17 of the Acts of 1859, was repealed

outright by the statute of 1891. While the amendment of section 18 and the repeal of section 19 of the statute of 1868 materially changed the law, the change is of no importance in the present case.

The relationship of the persons referred to in the agreed statement of facts may be understood at a glance from the following diagram:

When W. E. Wippel died his only relatives then living were his half sister, Carolina, and his cousins, Rosina, Gottlieb, Robert, Ernestine, and Bertha.

W. E. Wippel died intestate, leaving no widow and no issue. If both of his parents had been living, the whole of his estate would have gone to his parents (R. S. 22-119), and would have gone to his parents in equal shares, one-half to his mother, Rosina, and one-half to his father, Christian. The agreed fact is that at the time of the death of W. E. Wippel his parents were dead. Turning to what the statute prescribes in case both parents are dead (R. S. 22-120), we encounter some ambiguity because of use of the words "or either of them," and "or to either of them." The words appeared in the Iowa statute, from which our own was derived. In 1874 the Iowa court said:

"We find the true meaning of this section to be that, if both the parents of the intestate be dead, the portion which would have fallen to their shares respectively by the rules of the preceding sections, shall be disposed of in the same manner as if they had both outlived the intestate, and died in the possession and ownership of the portion falling to their respective shares, and so on through ascending ancestors and their heirs.

"We are aware that we do not, by this construction, give to the words, 'or to either of them,' which occur in this section, the force and meaning claimed by appellant's counsel. There is no greater foundation or warrant for applying these words to the parent last dying before the death of the intestate than to the one first dying. When both of the parents are dead before the decease of the intestate casting the descent, it is impossible to apply these words to one to the exclusion of the other, for they apply equally to both." (*Bassil v. Loffer,* 38 Ia. 451, 454.)

This court has twice discussed the subject (*Tays v. Robinson,* 68 Kan. 53, 55, 74 Pac. 623; *Sparks v. Bodensick,* 72 Kan. 5, 12 [1905], 82 Pac. 463), has been unable to give any force to the quoted words, and in *Sparks v. Bodensick* the interpretation given the statute by the Iowa court was approved. The result is that R. S. 22-120 has the same meaning as if it read:

"If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on through ascending ancestors and their issue."

In 1880 this court, without analyzing the statute or discussing its origin, applied what is now R. S. 22-120 as if it read as just indicated:

"If the intestate leave no issue or wife, and if both of his parents are dead, one-half of the estate goes to the heirs of the deceased father, and the other half to the heirs of the deceased mother." (*Russell v. Hallett,* 23 Kan. 276, syl. ¶ 2.)

The decision in *Russell v. Hallett* has been approved three times: *Tays v. Robinson,* 68 Kan. 53, 55, 74 Pac. 623; *Sparks v. Bodensick,* 72 Kan. 5, 12, 82 Pac. 463; *Fuller v. Haynes,* 86 Kan. 37, 119 Pac. 331.

The opinion in *Fuller v. Haynes* (1911) was *per curiam.*

R. S. 22-128 declares that children of the half blood shall inherit equally with children of the whole blood. The term "half blood" describes the relationship between children who have but one common parent. (Black Law Dictionary; Bouvier Law Dictionary.) Rosina married Strauss, and had three children by him. Those children were related to each other as children of the whole blood. Rosina then married Christian Wippel, and had two children by him. Those children were related to each other as children of the whole blood. The Strauss children and the Christian Wippel children were related to each other as children of the half blood, one

set having the blood of Rosina and Strauss, and the other set having the blood of Rosina and Christian Wippel.

Children of the half blood inherit equally with children of the whole blood, from whom? The answer is, from the common parent only. This was determined in the cases of *Carlton v. Burleigh,* 52 Kan. 392, 393, 34 Pac. 1050, and *Tays v. Robinson,* 68 Kan. 53, 55, 74 Pac. 623. Rosina's children by Strauss, and her children by Christian Wippel, would all inherit equally from her; but the Wippel children would inherit nothing from Strauss at his death, and the Strauss children would inherit nothing from Christian Wippel at his death.

When W. E. Wippel died there could be no descent of property to widow or child because he had neither. The statute then directs us to his parents. They, too, were dead and could take nothing by any mode of acquisition, because they were dead. However, for the purpose of establishing a course of inheritance from W. E. Wippel, his father and mother are to be considered as if they were alive, and as if each one took half of their son's estate. W. E. Wippel's father and mother were the most intimate of his kindred, and their inheritance from him satisfies the dictates of supposed natural justice and affection.

Also, for the purpose of establishing a course of inheritance from W. E. Wippel, each parent is regarded as outliving the son, and as then dying in the possession and enjoyment of each one's portion. In this instance, Rosina had a child, who is regarded as taking her portion. Christian left no child, and as the statute directs, we derive inheritance through ascending ancestors. Christian's father and mother are regarded as taking from him. Carl is regarded as taking from his and Christian's father, and Carl's living children are regarded as taking from him.

In fact, Rosina's daughter, Carolina, took from W. E. Wippel, and Christian's nephews and nieces took from W. E. Wippel. The fact was determined by employing the hypotheses which have been indicated. This was the decision in the case of *State v. Ellis,* 72 Kan. 285, 83 Pac. 1045. Nothing was decided by that case except that one who inherits does so directly from the person whose death cast the descent. In this instance the matter of whether one who inherits takes mediately or immediately is not important. Alienage is not involved, and the simple questions are: Who shall take, and what shares shall the respective takers receive?

There is some conflict between the legal theory on which the decision in the case of *State v. Ellis*, 72 Kan. 285, 83 Pac. 1045, was based, and the legal theory on which the decision in the case of *Head v. Spier*, 66 Kan. 386, 71 Pac. 833, was based. In the latter case the syllabus reads:

"The heirs of a decedent, whether lineal or collateral, take their distributive share of the estate subject to all existing equities in favor of the estate against them personally and against any of those through whom they inherit."

The conflict in theory is not material here.

The result of the foregoing is that the decision of the district court was controlled by decisions of this court establishing rules of property which are to be adhered to unless the legislature sees fit to change them. Space cannot be given to a detailed discussion of the brief for the appellant.

The judgment of the district court is affirmed.