### No. 34,550

### In re Estate of Ellen Doyle, Deceased

JOHN YOUNG, of Summit, New Jersey, HENRY YOUNG et al., *Appellants*, v. MARGUERITE McGUAN, BRIDGET T. MORAN et al., *Appellees.*

### No. 34,551

### In re Estate of Ellen Doyle, Deceased

ALICE L. FLAHERTY, Claimant, *Appellant*, v. MARGUERITE McGUAN et al., *Appellees.*

### No. 34,558

### In re Estate of Ellen Doyle, Deceased

THE STATE OF KANSAS, ex rel. JAY S. PARKER, Attorney General, et al., *Appellants*, v. HENRY YOUNG et al., and MICHAEL McGUAN et al., Claimants to the Estate of Ellen Doyle, Deceased, *Appellees.*

### No. 34,560

### In re Estate of Ellen Doyle, Deceased

PATRICK J. DOYLE et al., *Appellants*, v. HENRY YOUNG et al., *Appellees.*

No. 34,561

In re Estate of Ellen Doyle, Deceased

IRENE G. DOYLE O'DEA et al., *Appellants*, v. JAY S. PARKER, Attorney General of the State of Kansas, et al., *Appellees*.

No. 34,566

In re Estate of Ellen Doyle, Deceased

TILDA DOYLE COX et al., *Appellants*, v. JAY S. PARKER, Attorney General, et al., *Appellees*.

No. 34,568

In re Estate of Ellen Doyle, Deceased

PEARL EDITH DUNEGAN SHIPLEY et al., Claimants, *Appellants*, v. HENRY YOUNG et al., *Appellees*.

No. 34,592

In re Estate of Ellen Doyle, Deceased

W. H. DOYLE et al., *Appellants*, v. HENRY YOUNG et al., *Appellees*.

(103 P. 2d 52)

Opinion filed June 8, 1940.

*Jay S. Parker,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Harold M. Hauser,* special assistant attorney general, for the appellants in No. 34,558.

*W. H. Carpenter, W. R. Carpenter* and *John E. Wheeler,* all of Marion, for appellants in No. 34,550, and for the appellees in Nos. 34,558, 34,560, 34,561, 34,566, 34,568 and 34,592.

*D. M. Ward,* of Peabody, *Minnie L. Dettweiler, C. B. McCrory* and *Wellington L. Merwine,* all of Okmulgee, Okla., for the appellant in No. 34,551.

*John Madden, Jr., Howard C. Kline,* both of Wichita, and *Leal W. Reese,* of Taylorville, Ill., for the appellants in No. 34,560.

*H. C. O'Reilly,* of Cottonwood Falls, and *Frank R. Gusweiler,* of Cincinnati, Ohio, for the appellants in No. 34,561.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, and *Roscoe King,* of Marion, for appellants in No. 34,566.

*A. M. Etchen,* of Kansas City, and *I. B. Smith,* of Kansas City, Mo., for the appellants in No. 34,568.

*Harry W. Colmery,* of Topeka, and *R. L. McMillan,* of Raleigh, N. C., for the appellants in No. 34,592.

*J. B. Patterson,* of Wichita, for the appellees in No. 34,550, No. 34,551 and No. 34,558.

*James W. Rodgers,* of Holdenville, Okla., and *Phil M. Donnelly,* of Lebanon, Mo., for Vander Doyle and others.

*James L. Humphrey* and *Arthur Humphrey,* both of Junction City, as *amici curiae,* in No. 34,550.

The opinion of the court was delivered by

HARVEY, J.: These are appeals by the state, on the relation of the attorney general, and by others, from the judgment of the district court of Marion county determining who are the heirs at law of Ellen Doyle, deceased, and arise in this way: Ellen Doyle, an elderly spinster, and a resident of Marion county, died March 12, 1935, intestate and without known heirs. Upon an application duly made to the probate court of that county an administrator was appointed. An inventory filed by him showed Ellen Doyle left real and personal property appraised at about $450,000. Most of this was in bonds, the market value of which was low at the time of the appraisement, but the market value of the bonds has improved until we are told the estate now is worth more than $700,000. Under

our statutes (R. S. 22-933 to 22-935; 22-1201 to 22-1206), held to be applicable (*State, ex rel., v. Good,* 142 Kan. 434, 49 P. 2d 633), the attorney general properly assumed the duties of representing the state in the interests of the school fund (*State, ex rel., v. Rector,* 134 Kan. 685, 8 P. 2d 323; *McVeigh v. First Trust Co.,* 140 Kan. 79, 34 P. 2d 571; *Hauser v. Estate of Doyle,* 143 Kan. 719, 56 P. 2d 1217). The fact that Ellen Doyle died intestate, without known heirs, and left so large an estate was a source of news, and as such received wide publicity, with the result that many persons undertook to show they were related to Ellen Doyle and entitled to some share of her estate as her heirs at law. More than 140 petitions were filed in the probate court by persons, or groups of persons, representing a total of more than 900 individuals, in which the petitioners claimed to be heirs at law of Ellen Doyle and entitled to share in her estate. Under the practice approved by this court (*McVeigh v. First Trust Co.,* supra; *Heine v. First Trust Co.,* 141 Kan. 370, 41 P. 2d 767; *Wentworth v. First Trust Co.,* 147 Kan. 466, 77 P. 2d 976), the probate court heard all these various claims in one case and found that a group of claimants, known in the record and hereinafter spoken of as the Young claimants, had proved their heirship to Ellen Doyle, and that none of the other claimants had made such proof, and rendered a judgment and decree that the Young claimants were entitled to the entire estate. From these findings and decree the state, by the attorney general, and more than twenty other groups of claimants, appealed to the district court. There all the claims brought up by the appeals were tried by the court *de novo* as one case. After hearing and considering the voluminous evidence and the argument of counsel, the court found that the Young claimants had proved their relationship as heirs at law of Ellen Doyle through her father, and as such were entitled to one-half of the estate; that the group of claimants known in the record and hereinafter referred to as the McGuan claimants had proved their relationship as heirs at law of Ellen Doyle through her mother, and as such were entitled to one-half of the estate. The fractional shares of the members of these groups, respectively, also were found, but there is no controversy here over these fractional shares. The trial court found against the claims of all other claimants, or groups of claimants.

From these findings and judgment the state by the attorney general has appealed (No. 34,558), and, broadly speaking, contends

the evidence is insufficient to support the findings and judgment in favor either of the Young claimants or of the McGuan claimants. The Young claimants, contending they are entitled to all the estate, have appealed (No. 34,550) from that part of the findings and judgment of the trial court in favor of the McGuan claimants as being unsupported by the evidence. They also contend the McGuan claimants did not properly perfect their appeal from the judgment of the probate court denying their claim, hence the district court had no jurisdiction to hear and allow their claim. The McGuan claimants have moved to dismiss this appeal on the ground that the Young claimants claimed heirship to Ellen Doyle through her father only; that as such claimants they could not in any event inherit more than half of the estate; hence, that they have no concern with that portion of the decree which determined to whom the other half of the estate should pass. We will discuss these questions later. Also, groups of claimants whose claims of heirship to Ellen Doyle were denied by the district court, have appealed to this court as follows: Alice L. Flaherty (No. 34,551), who claims heirship through the mother of Ellen Doyle, and Patrick J. Doyle et al. (No. 34,560); Irene G. Doyle O'Dea et al. (No. 34,561); Tilda Doyle Cox et al. (No. 34,566); Pearl Edith Dunegan Shipley et al. (No. 34,568), and W. H. Doyle et al. (No. 34,592); all of whom claim heirship to Ellen Doyle through her father. Notwithstanding that separate appeals have been taken to this court, they will be considered together here as one case and disposed of in one opinion. Such differences as arise in them, and the claims made by the respective parties, will be disposed of as we proceed.

To aid this court in its work counsel have furnished us with more than 2,000 pages of printed abstracts and briefs, yet the questions argued are for the most part questions of fact. There are a few legal questions pertaining to the admissibility of evidence and to the legal effect of certain evidence admitted. There is also the legal question of whether the evidence was sufficient to support the judgments in favor of the successful claimants and the question whether the Young claimants had such an interest in the judgment in favor of the McGuan claimants as entitled them to appeal.

The facts which give rise to this last question apparently are not controverted, and may be stated as follows: Patrick Doyle and Mary McGuan were married at St. Louis, Mo., September 5, 1852. About 1871 they moved to Marion county, Kansas, and established

a home near Florence, which they and their children continued to. occupy as long as they respectively lived. Between the time of the marriage and their settlement near Florence they had lived at Alton, Ill., at St. Louis, and perhaps at other places in Missouri, and at Leavenworth, Kan. The wife, Mary McGuan Doyle, died March 4, 1892. The husband, Patrick Doyle, died March 23, 1911, without having married again. Five children were born to this union, namely, Thomas Doyle, born in Illinois in 1855, died in infancy; Ellen Doyle, born at Alton, Ill., July 7, 1857, died at Florence, Kan., March 12, 1935; Mary Doyle, born at Leavenworth, Kan., August 25, 1859, died at Florence, Kan., June 16, 1933; William B. Doyle, born at Leavenworth, Kan., January 26, 1862, died at Florence, Kan., April 26, 1918, and James Doyle, born at St. Louis, Mo., July 7, 1869, and died at Florence, Kan., February 4, 1877. None of these children ever married, and they left no descendants by adoption or otherwise. Ellen Doyle was the last surviving member of her immediate family.

Our statutes pertinent to this question, in force at the time of the death of Ellen Doyle, read:

"If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents." (R. S. 22-119.)

"If one of his parents be dead, the whole of the estate shall go to the sur-' viving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue." (R. S. 22-120.)

This court had occasion to construe this statute in *Russell v. Hallett*, 23 Kan. 276, where it was held:

"If the intestate leave no issue or wife, and if both of his parents are dead, one-half of the estate goes to the heirs of the deceased father, and the other half to the heirs of the deceased mother." (Syl. ¶ 2.)

This interpretation of the statute has been followed and approved in *Tays v. Robinson*, 68 Kan. 53, 55, 74 Pac. 623; *Sparks v. Bodensick*, 72 Kan. 5, 82 Pac. 463; *Fuller v. Haynes*, 86 Kan. 37, 119 Pac. 331; and in *Genschorck v. Blumer*, 136 Kan. 228, 14 P. 2d 722. It was also followed in *Baird v. Yates*, 108 Kan. 721, 196 Pac. 1077, where a child who had been adopted died, leaving no surviving spouse or descendants, but leaving a sum of money as his estate. His natural father was dead. His natural mother and his adopting

parents were living. A controversy arose between them as to how the estate would pass under the statute above quoted. The court held:

". . . on death of such a child, intestate, and leaving neither wife nor issue, his surviving parents, by nature and by adoption, inherit his estate." (Syl. ¶ 2.)

Later the parties united in a request for this court to indicate to the district court the specific judgment to be entered, and this court by an order, not printed in our reports, but printed in 200 Pac. 280, directed the district court "to distribute the fund in controversy, one-third" to each of the surviving parents. Counsel for appellant in No. 34,550, and counsel *amici curiae,* argue that this construction does not give effect to the words "or either of them" in the statute (G. S. 1935, 22-120). That particular point has been dealt with in *Genschorck v. Blumer,* supra, and earlier cases cited therein, and the court was unable to give any force to the quoted words. Our statutes above quoted originally were taken from Iowa—a fact repeatedly noted in our decisions above mentioned and adverted to in the briefs of counsel. The Iowa decisions accord with those of our state in being unable to give any force to the words "or either of them," and also accord with our decisions in *Russell v. Hallett,* supra. See *Bassil v. Loffer,* 38 Ia. 451, 454; *In re Estate of Parker,* 97 Ia. 593, 67 N. W. 909; *Lawley v. Keys,* 172 Ia. 575, 154 N. W. 940; *McAllister v. McAllister,* 183 Ia. 245, 167 N. W. 78; *In re Estate of Bradley,* 210 Ia. 1013, 231 N. W. 661. We think it clear from these authorities that those who claim to be heirs of Ellen Doyle through her father cannot be entitled to more than one-half of her estate. Counsel for the Young claimants and *amici curiae* quote our constitution (art. 6, sec. 3):

"The proceeds of . . . all estates of persons dying without heir or will, . . . shall be a perpetual school fund, . . . inviolably appropriated to the support of common schools."

They point to the word "heir," say it is used in the singular number, and argue if a decedent leaves one heir, no matter how that heirship is traced, none of the estate passes into the state's school fund. This argument is without force for several reasons: (1) We are not concerned here, or at most only indirectly, with what part, if any, of the estate of Ellen Doyle passes to the perpetual school fund. The primary question before us is whether the claimants have shown by proof that they are heirs of Ellen Doyle under our statute per-

taining to the devolution of property of an intestate decedent. (2) The word "heir" is interchangeable with "heirs" (29 C. J. 287) and frequently is used in a collective sense as comprehending any number of persons who may happen to answer to the description. We think it is so used here. (See, also, G. S. 1935, 77-201, *third.*) (3) The constitutional provision does not deal with the question of who is, or who may be, the heir or heirs of a decedent. (4) Who is an heir, or who are the heirs, of a decedent depends upon the law of the state or country. That was the rule of the common law. (See 2 Blackstone 201, 211.) Our legislature can make any person an heir of a decedent resident of this state. So, we must of necessity turn to the statutes to see who is or may be an heir of a decedent. This we have considered hereinbefore and concluded the Young claimants cannot be prejudiced by the judgment of the court relating to that part of the estate which must be traced through the mother of Ellen Doyle.

It is a fundamental rule that one who has no particular interest in a judgment rendered by a court, and who is not prejudiced by it, cannot appeal therefrom. (*DaLee v. Blackburn,* 11 Kan. 190; *Payne v. National Bank,* 16 Kan. 147; *McLeod v. Palmer,* 96 Kan. 159, 150 Pac. 535; *Cox v. Stambaugh,* 96 Kan. 684, 153 Pac. 513; 2 Am. Jur. 938; 4 C. J. S. 353, 356.)

Our conclusion is that the appeal of the Young claimants from the judgment in favor of the McGuan claimants should be dismissed. It is so ordered. This does not mean, however, that we will not consider evidence shown by the abstract in this appeal which has a bearing upon whether the court should have rendered judgment in favor of the McGuan claimants; this, for the reason that all of these claims were treated as part of one case, and the evidence, irrespective of who introduced it, or whether it supported or tended to defeat the claim of any group of claimants, was necessarily considered by the trial court and will be considered here.

The Young claimants in the district court moved to dismiss the appeal from the probate court of the McGuan claimants, contending it had not been taken in the manner provided by law. That motion was overruled. The Young claimants contend that was error. Irrespective of their right to raise that question, we take notice of it because it is a question that goes to the jurisdiction of the district court to hear the claim of the McGuan claimants. A question of jurisdiction of the court is one which may and should

be considered irrespective of who raises it. Indeed, if lack of jurisdiction is shown by the record, the court on its own motion should take note of it. However, we see nothing wrong with the appeal taken from the probate court by the McGuan claimants. The judgment of the probate court, from which the appeal was taken, was one from which our statute (G. S. 1935, 22-1101, *third* and *fourth*) authorizes a party to appeal. Notice of the appeal was given promptly in open court, as authorized by G. S. 1935, 22-1102, and an appeal bond was given, as provided by statute. In the district court, after the Young claimants had moved to dismiss the appeal, the McGuan claimants, by leave of court, filed an amended notice of appeal and bond. We see no error in that ruling, but, more than that, we see nothing seriously wrong with the notice of appeal and the bond first given. The result is, the district court had jurisdiction to consider the appeal of the McGuan claimants.

We now take up the specific appeals, and first that of the state, on the relation of the attorney general (No. 34,558), and examine the record to see if there is substantial, competent evidence to support the findings and judgment of the trial court in favor of the Young claimants, who traced their relationship as heirs of Ellen Doyle through her father, and in favor of the McGuan claimants, who traced their relationship as heirs of Ellen Doyle through her mother. If the judgment of the trial court in favor of these two groups of claimants is sustained, its judgment denying claims of other appellants also must be sustained, for their claims are predicated upon other evidence tending to show facts which differ from and are inconsistent with those which support the judgments in favor of the successful claimants. However, since all claims were heard as one case, the trial court, in reaching its decision, necessarily considered evidence offered in behalf of all claimants, and we must do so in considering the questions presented by the state's appeal.

The Young claimants traced their relationship as heirs at law of Ellen Doyle through her father, Patrick Doyle. The evidence tending to support their claim may be summarized as follows: Patrick Doyle was born in County Carlow, Ireland, November 1, 1816. He was baptized by the Catholic priest at Bagenalstown, Ireland, January 14, 1820. Respecting this the parish church record reads:

"Parish of Bagenalstown, Diocese of Kildare & Leighlin:

"It appears from the Register of Baptisms of above Parish that Patrick Doyle of John Doyle and Judith Brenan was born on the ..................... day of ........................, and baptized according to the rite of the Catholic Church

on the 14th day of Jan., 1820, by the Rev. ................................................... the Sponsors being Oliver Rafter and Judy Quin."

After the death of Ellen Doyle her administrator found among the effects in her house an old memorandum book, on the flyleaf of which was written:

"Florence June 7, 1874, Patrick Doyle, Balanakill, County Carlow, Ireland, Bagenalstown."

A census of the Catholic church at Florence, taken in 1888, listed:

"The name: Patrick Doyle; The parents' name: John Doyle and Mrs. Judith Doyle; Residence: Florence, Kansas; Last previous residence: St. Louis, Missouri; Occupation: Farmer; Country of birth: Carlow County, Ireland; Age: 72."

After the death of Ellen Doyle, and a few months before the hearing in probate court, the priest then in charge of the Catholic church at Florence added to this census record the word "Brennan," indicating the mother of Patrick Doyle was Judith Brennan Doyle, and added the word "Bagenalstown," as indicating the city or parish of the birth of Patrick Doyle. Counsel for the state, and for some of the other claimants, object to these additions to the record being received in evidence. We think the ruling admitting them was not erroneous. The evidence disclosed that when such records are not as complete as they might be the same priest who made them, or his successor, may and should make additions thereto when furnished information which he deems reliable. The additions were so made in this case. The court's ruling on this point cannot be detrimental to those who complain of it, for there is an abundance of other evidence that the maiden name of the mother of Patrick Doyle was Judith Brennan, and that he was born at Balanakill, in the parish of Bagenalstown, County Carlow, Ireland. Indeed, there is evidence which the trial court deemed persuasive that the full maiden name of Patrick Doyle's mother was Judith Ann Brennan, although there is some conflict and some discrepancies in the testimony upon that point, all of which it was the function of the trial court to weigh.

Since it is involved in several of the claims, we take note of the pertinent church history. The evidence showed the Catholic church records were not kept in the Parish of Bagenalstown prior to 1820. In the Parish of Leighlenbridge records of births were kept from 1783 to October, 1786, then none were kept until 1819. This was because of severe religious persecution of Catholics in that area,

which continued, with some abatement of severity, until 1830. The records kept were of baptisms and of marriages. In accord with the faith of the Catholic people it was their custom to have their children baptized soon after birth, but even after records of baptisms began to be kept in 1820 it was not always that records of baptisms were made. Later, many persons told the priests they had been baptized, but no record of it could be found. The fact that no record of the baptism of a child of certain parents could be found is not conclusive evidence the child was not born, or was not baptized. Most of the people were illiterate. A few attended Catholic schools, as did Patrick Doyle. They spoke the Gaelic language. Some of the records made were not as complete as they might have been. In recording the names of the parents of a child baptized, or of persons married, sometimes the full Christian and surname was given, at other times only the Christian name, or one of two Christian names, or a common abbreviation of a Christian name, as "Betty" for "Elizabeth." In short, the records when made appear to be reliable for what they show, but in determining heirship they do not exclude other competent, supplemental evidence.

Patrick Doyle came to the United States perhaps sometime in the 1840's. He was married to Mary McQuin at St. Louis, Mo., September 5, 1852, by a Catholic priest, as shown by the parish records, and died at Florence, Kan., March 23, 1911. There was evidence that Patrick Doyle had two brothers and one sister who died without leaving issue; that he also had a sister Elizabeth, also known as Betty Doyle, who married Michael Young, and who left descendants, who are claimants here; also that he had a sister, Ann Doyle, who married Michael Kelly and who left one descendant, who is a claimant here. There is no controversy over the tracing of the descendants of Elizabeth Young and Ann Doyle Kelly. There was a real controversy in the trial court as to whether Elizabeth Doyle Young and Ann Doyle Kelly were sisters of Patrick Doyle. There is no parish church record of the baptism of Elizabeth Doyle. There is a parish record of her marriage to Michael Young, February 16, 1857, and of her death, February 21, 1908. Her death certificate states that she was ninety years of age. This would make the date of her birth in 1818, hence, the absence of a parish record of her baptism is not important.

John Young, a son of Elizabeth Doyle Young and Michael Young, lived with or near his parents until 1902, when he moved to Summit, N. J., where his brother, Michael Young, who left Ireland several years earlier, was living. He stayed in New Jersey more than a year, until the death of his father, Michael Young, in August, 1903, when he returned to Ireland and lived with his mother until her death in 1908. He was a witness at the trial of this case. He knew the family history of his mother. He testified that his mother was the daughter of John Doyle and Judith Brennan; that she was a sister to Patrick Doyle of Florence, Kan., and Ann Doyle Kelly of Williamsburg, Mich.; Daniel Doyle, who died in infancy; Mary Doyle, who married James Byrne, and Thomas Doyle, who married Bridget Kinsella. He was personally acquainted with the two last named, both of whom lived and died in Ireland. He had never met Patrick Doyle or Ann Doyle Kelly, both of whom had migrated to America before he was born, but he had corresponded with both of them, writing for his mother, who could not write, and more frequently with Patrick Doyle. He testified that over a long period of years his mother, Elizabeth Doyle Young, received from her brother, Patrick Doyle, letters written by him from Florence, Kan., and that on one occasion, several years before 1902, Patrick Doyle sent photographs of himself and his three children, which were like similar pictures offered in evidence. On the death of his mother, and the witness coming again to America in 1908, these letters and photographs were not preserved.

The evidence tends to show that Ann Doyle lived for a time in England, where she met and married Michael Kelly. Their first child was born in England. A descendent of this child is one of the claimants. They came to America and lived in Canada for a few years, where their second child, Thomas Kelly, was born, and then settled in Grand Traverse county, Michigan, where they lived until her death, March 10, 1899, and his death in 1906. There is testimony that for several years prior to 1893 Patrick Doyle corresponded with his sister, Ann Doyle Kelly, in Michigan. Alwilda Cain Kelly, the widow of Thomas Kelly, son of Ann Doyle Kelly, testified she saw and read many of those letters and talked with her mother-in-law, Ann Doyle Kelly, about them. In 1893 Patrick Doyle went alone to the World's Fair at Chicago and went on to Michigan and visited his sister, Ann Doyle Kelly. On meeting her he said, "I would have known you if I would have met you in New

York because of the scar on your face." She had a noticeable scar on her forehead. Patrick Doyle explained she had received that when he and she were playing as children and she fell and struck her face on a stone. He stayed there about two weeks visiting Ann Doyle Kelly and her family. Henry Young, a witness at the trial, a son of Elizabeth Doyle Young, had migrated to America and gone to Grand Traverse county, Michigan, because his Aunt Ann Doyle Kelly lived there, and was working a few miles from the Kelly home. He visited as many as six or eight days with Patrick Doyle while he was visiting the Kellys. The fact that Patrick Doyle made this trip to Michigan to see his sister, Ann Doyle Kelly, is established by testimony of witnesses other than those attempting to establish claims to the estate of Ellen Doyle. There is testimony that promptly after returning to his home from this visit Patrick Doyle sent two small albums to the Kellys, one for his sister, Ann Doyle Kelly, and one for his nephew, Thomas Kelly. Each of these contained a photograph of himself and his three children, Ellen, Mary and William. One of these was produced in court and was identified as containing pictures like those he sent not far from the same time to his sister, Elizabeth Doyle Young, in Ireland. There was testimony that Patrick Doyle continued to correspond with Ann Doyle Kelly as long as she lived, and later less frequently with her son. In his home, after the death of Ellen Doyle, was found a photograph of the flowers at the funeral of Ann Doyle Kelly. In 1912 Ellen Doyle and her brother, William Doyle, visited Thomas Kelly and his wife in Michigan, and apparently formed close and friendly family relations with them. It should be noted that all this was done before the Doyle "fortune" came into being. Patrick Doyle preëmpted the 160 acres of land, which later became the family home, in 1859, but did not move his family upon it until about 1871, when the Santa Fe was building its railroad near it. The town of Florence was located near his land. He shared the experiences common to early settlers. That he was a man of more than ordinary standing in his community is evidenced by the fact that a creek which runs through or near his land was called "Doyle creek," and a township of the county was named "Doyle township." He devoted his energies to farming and stockraising. He was a substantial citizen, somewhat reticent about his business and his relatives. After his death oil was discovered on his lands. His children were able to lease their lands for good bonuses. Oil wells drilled on their

lands were good producers. This income was invested; hence, the fortune grew. As long as any of them lived they kept up a friendly correspondence with their "cousins," the Kellys, and occasionally sent them checks of from $100 to $500, these aggregating about $3,700. Many other items of evidence might be mentioned, but we think this sufficient to show there was an abundance of substantial, competent evidence to support the judgment of the trial court in favor of the Young claimants.

The principal objection to this conclusion, made by the state and some of the other appellants, arises from the fact that the parish church records do not show an Elizabeth Doyle, or an Ann Doyle, baptized, who was a daughter of John Doyle and Judith Brennan. We have already pointed out that, computed from the certificate of her death, shown by the church record, this Elizabeth Doyle was born in 1818, when no church records of baptisms were being kept. Depositions taken in Ireland show parish records of the baptism of one Betty Doyle, daughter of John Doyle and Anne Bryan, of the date of April 26, 1826. This was eight years after the birth of Elizabeth Doyle Young, and must have been the baptismal record of another person.

The date of the birth of Ann Doyle Kelly, computed from her death certificate, is September 5, 1828. This was a time when an effort was being made to keep records of baptisms, but the evidence disclosed that many times such records were not made, even when the child was baptized. The very strong evidence of Patrick Doyle's recognition and treatment of Ann Doyle Kelly as his sister is not conclusively disputed by the absence of the parish record of her baptism. There is a parish record of the baptism of an Anne Doyle, daughter of John Doyle and Anne Bryan, on the date of September 15, 1823. This was five years before Ann Doyle Kelly was born, computing her birth from her age as given in her death certificate, and must have been the baptismal record of another person. The information contained in this death certificate was furnished by her son, Thomas Kelly. It states that her parents were John Doyle and Anne Doyle, but it also states she was born in England, which is contrary to all the other evidence on that point. The court very well might have concluded that Thomas Kelly, in giving the information for the death certificate, was well informed as to the age of his mother, for it is stated in years, months and days, but that he was not well informed as to the place of her birth or the Christian

name of her mother, or may have stated only one of the two Christian names of her mother, whose full maiden name appears to have been Judith Ann Brennan. More than that, the parish records do not show any Elizabeth or Betty Doyle baptized of the date, or birth date, of September 5, 1828. The weight to be given to this evidence was for the trial court. Much of the evidence to support the judgment in favor of the Young claimants was the testimony of witnesses in open court. We have read the transcript of all the testimony. Aside from the obvious confusion on one point of one aged, illiterate witness, and slight discrepancies in the testimony of the respective witnesses of the type common when there are many witnesses to various aspects of one subject, we see nothing in the testimony seriously to discredit it. But it is not the province of this court to weigh that testimony. That was the duty of the trial court. We examine it only to see that there is substantial, competent evidence to support the judgment rendered by the trial court. We have no hesitancy in saying there was an abundance of such evidence to support the judgment in favor of the Young claimants for one-half of the estate of Ellen Doyle.

The appeals of other claimants, who endeavored to trace their relationship as heirs at law of Ellen Doyle through her father, may be disposed of briefly. In No. 34,560 claimants' testimony tended to show the maiden name of the mother of Patrick Doyle was Margaret Ryan. This is supported only by the testimony of a few witnesses who at one time or another had talked briefly with some member of the Doyle family. It is in conflict with much documentary and parol evidence received in the case. In No. 34,561 claimants argue that Patrick Doyle had no sister and but one brother, who died in infancy; that Elizabeth Doyle Young and Ann Doyle Kelly were not sisters of Patrick Doyle; hence, they trace back one generation to a common ancestor for their family tree. The theory that Patrick Doyle had no sisters, named Elizabeth and Ann, is predicated solely on church parish records of baptisms, which we previously have discussed. It is conceded these claimants cannot recover if the judgment in favor of the Young claimants is sustained. In No. 34,566 claimants also argue that Patrick Doyle had no sister and but one brother, basing this solely on the church parish records, which we previously have discussed. They go back another generation and present evidence tending to support another family tree. Since we are affirming the judgment in favor of the

Young claimants, predicated upon the view that Patrick Doyle did have sisters, whose descendants were living at the time of the death of Ellen Doyle, details of the evidence respecting this claim need not be stated. We purposely have not analyzed and decided a contested motion to dismiss this appeal, for the result is the same whether the appeal is dismissed or the judgment of the trial court respecting it is affirmed. In No. 34,568 claimants contend they are descendants of a daughter of Patrick Doyle, who was secretly married to one Nancy Jane Mayfield about 1854, when Patrick Doyle and his wife and child were living in Illinois. No record evidence supports this claim; indeed, some of their own record evidence disputes it. The trial court was justified in denying their claim. In No. 34,592 the claim was so indefinite it is not seriously contended it should have been allowed. Appellants complain of the refusal of the court to give them more time to investigate. They had about four years and were unable to give the court any information as to their likelihood to be able to produce more specific evidence if additional time were given. There was no error in the court's ruling. Vander Doyle et al., claimants, had appealed to the district court, where their claim was heard and denied. They did not appeal to this court, but have filed an abstract and a brief in which they ask this court to pass upon certain questions. This procedure is not in harmony with our statute. (G. S. 1939 Supp. 60-3309, 60-3314.) The result is, these claimants have nothing before this court upon which it can rule. Notwithstanding this disposition of this group of appeals, we have read and considered all the abstracts and briefs, considering the evidence and arguments of all claimants as parts of one case, as it was considered in the trial court, and we see no reason to disturb the judgment of the trial court as to the paternal heirs of Ellen Doyle.

We now take up the state's appeal from the judgment of the trial court in favor of the McGuan claimants. They trace their relationship as heirs at law of Ellen Doyle through her mother, whose maiden name was Mary McGuan. The record discloses great variety in the spelling of the surname, all of which pertain to the same family, or some one of its members. We need not bother with these varied spellings. The parish church records show she was born September 7, 1824, and that she was the daughter of Farrell McGuan and Ellen Flanagan McGuan. The parish church records and depositions taken in Ireland show that she had one sister, Brigid,

who married Terence O'Brien, and four brothers, Farrell McGuan, Jr., Michael McGuan, John McGuan and Patrick McGuan. The evidence also shows that all of these brothers and sisters were dead and that only one of them, Farrell McGuan, Jr., left descendants who were living at the time of the death of Ellen Doyle. These descendants constitute the McGuan claimants found by the trial court to be entitled to one-half of the estate of Ellen Doyle. There was evidence to the effect that when Mary McGuan was about seventeen or eighteen years of age she was working out, perhaps as a domestic; that she became acquainted and began to keep company with a young man who was employed by a Protestant. Some of the witnesses gave the name of this young man as Patrick Doyle. Her family objected to this and she left home and took employment, first at the town of Carlow, and next at Wexford, and later migrated to America. She was married to Patrick Doyle at St. Louis, Mo., September 5, 1852, by a Catholic priest, as shown by the records of the church parish, and, as previously stated, later moved with him to a farm near Florence, in Marion county, Kansas, where she made her home until her death, March 4, 1892. The state, as appellant here, makes no attack on the sufficiency of this evidence, except in one particular. About 1874 to 1880 there was some litigation at St. Louis, Mo., over the estate of one Margaret Dwyer, in which an affidavit had been made that Mary McGuan Doyle was her sister. Mrs. Doyle went to St. Louis and testified in that case that she was a sister to Margaret Dwyer. (See *Neuhoff v. O'Reilly*, 93 Mo. 164.) The state's contention in this respect is that the Mc-Guan claimants, in showing their family geneology in Ireland, must have examined the history of a wrong family, since the history they took from there did not show anything about a Margaret Dwyer. Without reciting details, there is an abundance of evidence to justify the court in concluding that the geneology shown by the McGuan claimants was correct. This evidence of the Missouri litigation would not defeat the claim of the McGuan claimants for at least two reasons: *First*, it was not competent to be received in evidence, or, if received, should be weighed in relation to the controversy then pending. (See 3 Wigmore on Evidence, 2d ed., § 1483, where the question is discussed fully and many authorities are cited.) No question was being litigated in the St. Louis case with respect to the ancestry or generally as to the heirs of Mary McGuan Doyle. Any evidence she gave in that case would be regarded in law as self-

serving and not binding upon other persons who were, in fact, related to Mary McGuan Doyle as an heir at law of her daughter, Ellen Doyle, and who were not parties to the action being tried in Missouri. Apparently the trial court was familiar with this rule and applied it properly in weighing the evidence of this St. Louis litigation. *Second*, there is a possibility that Margaret Dwyer was a sister of Mary McGuan Doyle, even though the parish records examined in Ireland did not disclose it. In the early days of keeping records in that parish in Ireland occasionally there was a failure to make a record of a christening. More than that, it is clear from the record of the Missouri case that Margaret Dwyer left no descendants; hence, if she were a sister of Mary McGuan Doyle she left no one who would be an heir to the estate of Ellen Doyle.

In this connection we note the contention of Alice L. Flaherty, claimant, appellant in No. 34,551. Her testimony was to the effect that her father, of whom she is the only descendant, was a half-brother to Mary McGuan Doyle; that Ellen Flanagan McGuan, the mother of Mary McGuan Doyle, outlived her husband, Farrell McGuan, Sr., by approximately thirty years; that she married a second time, and that this claimant's father was a son and the only child of that marriage. This contention is based entirely upon the testimony of the claimant. No records of any kind were offered in support of it. Evidence taken in Ireland on behalf of the successful McGuan claimants disclosed that Ellen Flanagan Farrell did live several years after the death of her husband, but the evidence also was positive that she never married again, and that for many years before her death she made her home with her son, Farrell McGuan, Jr. We think the court was justified, under the evidence, in denying the claim of Alice L. Flaherty. There was an abundance of substantial, competent evidence to support the claim of the McGuan claimants. Therefore, the judgment in their favor for one-half of the Ellen Doyle estate is affirmed.

In its conclusion of facts the court found "that the only *known* paternal heirs of Ellen Doyle, deceased, are . . . ," naming them. (Italics ours.) The same language was used respecting the maternal heirs. Counsel for the state, as appellant, argue this is not a finding "who are the heirs," as required by G. S. 1935, 22-904. The point is not well taken. Colloquy between court and counsel indicate the court's view that the legal meaning of the phrase is the

same whether the word "known" is used or omitted. We concur in that view.

Error is predicated upon the order overruling the state's motion for a new trial, but this presents no question not previously discussed.

For reasons stated in the opinion the appeal in No. 34,550 should be dismissed, and in each of the other appeals the judgment of the trial court should be affirmed. It is so ordered.