No. 37,762

In the Matter of the Estate of JOHN B. BROWN, *Deceased.* (CLARENCE YORK, et al., *Appellants,* STATE OF KANSAS, *Appellee*).

(215 P. 2d 203)

Opinion filed
February 28, 1950.

*I. M. Platt* and *Arthur S. Humphrey,* both of Junction City, argued the cause, and *Charles I. Platt* and *James V. Humphrey,* both of Junction City, were with them on the briefs for the appellants.

*Robert A. Schermerhorn,* of Junction City, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, and *C. L. Hoover,* of Junction City, were with him on the briefs for the appellee.

The opinion of the court was delivered by.

SMITH, J.: This appeal involves a final settlement of an estate. From the order of final distribution made by the probate court an appeal was taken. The district court held that one-half of the estate of decedent escheated to the state on account of the failure of heirs. The heirs at law have appealed.

There is no dispute about the facts. The decedent, John B. Brown, came to this country from England with his mother Naomi shortly after 1867. Naomi's husband and his only brother had died in the service of their country sometime before her arrival in America with John. She had one other child named Sarah. Sarah was drowned in the Smoky Hill River, unmarried, and without issue, sometime in the nineties. After the arrival in America of decedent and his mother she was married to Thomas York. As a result of this marriage five children were born—Clarence, Frank, George and Edward, half brothers of decedent, and Nellie, a half sister. They all lived together in the York home after the death of the father and mother and the stepfather of decedent. The other boys left home but Nellie and her half brother, John Brown, de-

cedent, continued to occupy the homestead until decedent's death on May 15, 1947. On proper motion, the probate court set aside the homestead for the benefit of Nellie. No question is raised about that. It will be seen that Nellie was a half sister and Clarence, Frank, George and Edward were half brothers of the decedent, John Brown, on account of the mother of all of them being Naomi, the widow who had come from England in 1867 and married Mr. York. They were the only surviving heirs of decedent and they established their heirship through their common mother, Naomi. The state of Kansas intervened in the action and urged that on account of the failure of heirs through the father and paternal grandparents of the decedent, the state was entitled to one-half of the estate by escheat. The court held that the heirs did not have any interest or concern in one-half of the estate; that under our statute of descent and distribution one-half would go to the heir of the father of decedent, if any, and that on account of their being no heirs in the paternal line the one-half must be handled as escheated property. The heirs, that is, the half brothers and the half sister, have appealed.

The specifications of error are that the court erred in holding that the only heirs of decedent, being his half brothers and half sister through a common mother, inherited only half of decedent's estate; that it erred in holding that the half brothers and half sister did not inherit the whole estate; that the court erred in holding that the heirs of decedent, being his half brothers and half sister, had no interest in the estate which would have gone to the heirs of decedent's father if there had been any such heirs.

The appellants state the question involved is whether one-half of the estate left by intestate escheated to the state when all his heirs consisted of half brothers and a half sister through their common mother and there were no heirs from intestate's father's side. The section in effect when intestate died was G. S. 1947 Supp. 59-508. It provides, as follows:

"If the decedent leaves no surviving spouse, child, issue, or parents, the respective shares of his property which would have passed to the parents, had both of them been living, shall pass to the heirs of such parents respectively (excluding their respective spouses), the same as it would have passed had such parents owned it in equal shares and died intestate at the time of his death."

The statute providing for escheats is G. S. 1947 Supp. 59-514. That section provides, as follows:

"If an intestate decedent leaves no person entitled to take his property by intestate succession, as provided in this article, it shall escheat to and become the property of the state."

Counsel for the appellants argue it is a safe assumption from the history of the legislation on this subject that the legislature never intended a sister and brothers, being the only surviving heirs of their half brother, deceased, should sustain what counsel term "the punishing infliction of a seizure of one-half of the estate" by the state. The trouble arises because the decedent was only a half brother of the heirs. In most instances the children of a deceased mother are the children of a deceased father, that is, they have the same mother and father, and this question would not arise. At the outset, it should be noted the taking of property by inheritance is entirely a matter of statute. (See *Genschorck v. Blumer*, 136 Kan. 228, 14 P. 2d 722.) Chapter 80 of the Laws of 1862 was the chapter on descent and distribution. Sections 18, 19 and 20, also 22 provides, as follows:

"Sec. 18. If the intestate leaves no issue, the whole of his estate shall go to his wife, and if he leaves no wife nor issue, the whole shall go to his father.

"Sec. 19. If his father be previously dead, the portion which would have fallen to his share by the above rules, shall be disposed of in the same manner as though he had outlived the intestate and died in the possession and ownership of the portion thus falling to his share and so on through each ascending ancestor and his issue, unless heirs are sooner found.

"Sec. 20. If heirs are not found in the male line, the portion thus uninherited shall go to the mother of the intestate and to her heirs, following the same rules as above prescribed."

"Sec. 22. If, still, there be property remaining uninherited, it shall be escheat to the Territory."

Chapter 33 of G. S. 1868 again dealt with the same subject. Sections 20 and 21 of that chapter provide, as follows:

"Sec. 20. If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents.

"Sec. 21. If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue."

The statute as thus enacted appears in the General Statutes of Kansas of 1935, 22-119 and 22-120, without change.

In effect at the time the judgment in this case was entered was G. S. 1947 Supp. 59-508. It was enacted in 1939 as a part of the probate code. It has already been quoted herein.

After reciting the above legislative history, counsel for appellants ask us to hold that none of the participants in these legislative acts had any consciousness that a seizure such as is claimed here would be authorized by the literal terms of the act.

We are unable to accept this view. The statutes have received our attention on numerous occasions during the years. Without discussing all of them the opinion in *In re Estate of Doyle,* 152 Kan. 23, 103 P. 2d 52, deals adequately with the question. There Ellen Doyle had died, unmarried, without issue, or brothers or sisters, and both her parents had predeceased her. There were many claimants to her estate. The probate court had heard the claims and found that a group of claimants designated as the Young claimants were entitled to the entire estate. All the claimants appealed to the district court. There the court found that the Young group had proved themselves to be heirs at law of Ellen through her father, and were entitled to one-half of the estate and that a group designated as the McGuan claimants had proved their relationship as her heirs at law through her mother and were entitled to one-half of the estate.

Amongst other appeals was one by the Young claimants from that portion of the judgment in favor of the McGuan claimants contending they were entitled to the entire estate. The McGuan claimants moved to dismiss this appeal on the ground that the Young claimants claimed heirship through their father only; that as such claimants they could not in any event inherit more than half of the estate—hence they had no concern with that portion of the decree which determined to whom the other half of the estate should pass. On this question we said, after citing authorities:

"We think it clear from these authorities that those who claim to be heirs of Ellen Doyle through her father cannot be entitled to more than one-half of her estate. . . . Who is an heir, or who are the heirs, of a decedent depends upon the law of the state or country. . . . So, we must of necessity turn to the statutes to see who is or may be an heir of a decedent. This we have considered hereinbefore and concluded the Young claimants cannot be prejudiced by the judgment of the court relating to that part of the estate which must be traced through the mother of Ellen Doyle."

We dismissed the appeal of the Young claimants. In arriving at this conclusion we discussed the statutes we have reviewed here,

also *Russell v. Hallett,* 23 Kan. 276; *Tays v. Robinson,* 68 Kan. 53, 55, 74 Pac. 623; *Sparks v. Bodensick,* 72 Kan. 5, 82 Pac. 463; *Fuller v. Haynes,* 86 Kan. 37, 119 Pac. 331; *Genschorck v. Blumer,* supra; and *Baird v. Yates,* 108 Kan. 721, 196 Pac. 1077. Our holdings on this point have been uniform. It is hardly correct to say as counsel do that the state is seizing half of the inheritance of these heirs. As a matter of fact, there is no statute by which more than one-half this estate can reach appellants. As already remarked, inheritance in this state is all a matter of statute. Appellants take what the trial court gave them by means of the statute and there is no way for them to take any more than the statute gives them. The state does not take anything from any person when an estate escheats. There is no one to whom the statute says it should go, so it goes to the state. It is not taken from anyone however.

Appellants next point out the authorities we have cited and ask us to hold that they mean other than we have held them to mean. In effect, counsel ask us to hold that the statute means other than what the language says. This statute of descent and distribution is plain and unambigious in its terms. There is no room left for judicial interpretation. In such a situation we cannot hold the statute really means something else merely because the result under the particular circumstances leaves something to be desired. (See *In re Estate of Duel,* 161 Kan. 593, 171 P. 2d 271; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P. 2d 127.)

Appellants next point out Chapter 310 of the Session Laws of 1949. That chapter amended G. S. 1947 Supp. 59-508 by adding a clause at the end of the section, as follows:

". . . but if either of said parents left no such heirs, then and in that event his property shall pass to the living heirs of the other parent."

It will be noted the amendment was apparently enacted for the purpose of dealing with the situation we have here. It took effect upon its publication in the official state paper on April 15, 1949. The motion for a new trial in the situation we are considering was considered and overruled on the 16th day of April, 1949. It will be seen this amendment was published the day before the motion for a new trial was decided but after the other steps taken in the case recited here had transpired.

Appellants first argue the law as expressed in the amendment was always the law as though. the statutes had contained such a

provision from the beginning. Counsel first argue that the statute will operate retrospectively as well as prospectively when no constitutional obstacle intervenes; and that retrospective action must depend upon the intent of the legislature and that while there is a generally accepted rule that if the act does not expressly provide for retrospective operation the presumption is that only prospective reach is intended, this presumption does not obtain if the act is remedial in character; that while retrospective acts cannot be permitted to disturb vested rights, neither the state nor its political subdivisions have such here; that specifically the state may always waive an escheat; that the attitude of the appellate court toward a decision of the trial court, right under the then existing laws but wrong when the appellate court decides, because of an intervening change of the law should be to uphold the decision of the trial court.

We have concluded that the question whether the statute operates retrospectively or prospectively only is one of legislative intent and that there must be a strict rule of presumption against retrospective operation. (See 50 Am. Jur. 494, § 478.) The appellants seek to escape this rule by arguing that it does not apply when the statute under consideration is a remedial statute and he argues that this is a remedial statute. A definition is given of a remedial statute in 50 Am. Jur. 33, § 15, where the language reads:

"Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof implying an intention to reform or extend existing rights, and having for their purposes the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society, or of the public generally. Another common use of the term 'remedial statute' is to distinguish it from a statute conferring a substantive right, . . ."

See, also, *Words & Phrases*, Vol. 36, p. 825; also *Ellis v. Kroger Grocery Co.*, 159 Kan. 213, 152 P. 2d 860, where we state:

"The question here, however, is whether the new law is remedial in character, that is, whether it merely provides a method or procedure for the collection of future installments in the event appellant refuses to comply with the terms and requirements of the existing judgment."

See, also, *Van Doren v. Etchen*, 112 Kan. 380, 211 Pac. 144; *Connecticut Mutual Life Insurance Company v. Talbot et al.*, 113 Ind. 373, 14 N. E. 586; *Hasselman et al., v. McKernan et al.*, 50 Ind. 441; *Douglas County v. Woodward*, 73 Kan. 238, 84 Pac. 1028.

We have examined these authorities and have concluded that the

chapter in question in the Laws of 1949 does affect substantive rights. It does not provide how any rights may be enforced. It creates a right in and of itself. We are unable to say it is remedial and we hold on the question whether it should operate retrospectively or prospectively when it must be given a strict interpretation and a presumption indulged that it was intended to operate prospectively only. On the question whether the state by the enactment of this chapter waived its right to one-half of the estate—held that there is actually more at issue than whether the half of the estate escheated to the state. Within ten years under the provisions of G. S. 1947 Supp. 59-903 anyone claiming as an heir through the father may appear and claim his rights to one-half of this estate from the state. It would not do to say the state could extinguish this right by the enactment of a statute such as Chapter 310. The enactment of the above chapter is an added importance in this case. It gives weight to the argument heretofore expressed in this opinion that until the enactment, the law was as has been held in the authorities heretofore cited.

We have been furnished with a brief of *amicus curiae* which points out a holding from Iowa. In *In re Tripp's Estate*, 35 N. W. 2d 20, the facts were as stated by the court:

"Lucy E. Tripp, a resident of the state of Washington, and owner of an undivided interest in certain real estate in Iowa, died intestate on May 1, 1944, leaving no surviving spouse or child. Isabelle A. Kellihan was administratrix of her estate and there was no property except an interest in real estate in Lyon County, which was sold and the proceeds are in the hands of administratrix. The father and mother of Lucy E. Tripp had predeceased her. Heirs of the mother were found but no heirs of the father.

"The administratrix, in her final report, proposed to pay the entire net proceeds of the estate, amounting to $3184.66, to the collateral heirs of the decedent's mother. The state of Iowa objected to the proposed distribution, contending that one-half of the estate would have passed to the heirs of decedent's father, and should escheat to the state. The court sustained the proposed distribution of the administratrix in her final report and ordered distribution of the funds in her hands to the collateral heirs of the mother. The State of Iowa, hereinafter designated as plaintiff, appeals. Other parties interested are designated defendants."

The court said:

"The plaintiff also cites, and apparently relies upon, the case of *In re Doyle's Estate*, 152 Kan. 23, 103 P. 2d 52. This case, as to the facts involved, raises practically the same question as does the case at bar. The Doyle case cites and follows *Russell v. Hallett*, 23 Kan. 276, decided in 1880, and in which the question was the distribution of the interests of several persons who per-

ished in one disaster. The Hallet case refers to the rule in Iowa when it contained the words 'or, either of them.' In effect the laws of Kansas as to inheritance, with some variations, may be assumed to be the same as those of Iowa. The district court in the present case, we think rightly, did not follow the rule in the Doyle case, holding it neither necessary or desirable, and that the natural interpretation of the legislative intent under section 636.40 is that where one of the decedent's parents had no heirs the estate should pass to the heirs of the other parent. The district court did not feel called upon to follow the rule in the Doyle case for the further reason that the more equitable and just rule under our statutes was as announced in his opinion. We agree with this holding as being the legislative intent."

It is pointed out that our statutes of descent and distribution came from Iowa and also that we cited Iowa authorities in *In re Doyle*, supra. Actually the statutes of Iowa, section 636.41 contains a provision, as follows:

"If heirs are not thus found, the portion uninherited shall go to the spouse of the intestate, or the heirs of such spouse if dead, according to like rules, . . ."

That actually has the effect as the amendment to our statutes enacted in 1949. We hold the holding in *In re Tripp's Estate*, supra, will not require a reversal of the judgment in this case.

The judgment of the trial court is affirmed.