No. 13618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF THE ESTATE
OF HELEN HARMON BREWINGTON, Deceased.

---

Appeal from:   District Court of the Fourth Judicial District,
               Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Julio Morales argued, Missoula, Montana

    For Respondents:

        Glen Neier argued, and John V. Potter appeared,
        White Sulphur Springs, Montana

---

Submitted: May 18, 1977

Decided:

Filed:

_Thomas J. Kearney_
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Lawrence Brewington appeals from an order of the district court, Meagher County, denying his petition to amend a determination of heirs to include him as an heir of decedent, Helen Harmon Brewington.

Raymond Brewington died intestate in the 1950's. His wife, Helen Harmon Brewington, survived him. Raymond had several brothers and sisters, but under the laws of intestate succession Helen inherited the entire estate. Helen did not remarry and died intestate September 12, 1975. Several cousins survived her. During the probate of Helen's estate, her cousins were listed as heirs in a petition for adjudication of intestacy. At the time of Helen's death several brothers and sisters of her deceased husband Raymond were still living. One of them, Lawrence Brewington, filed a petition in Helen's estate proceedings asking the district court to amend the determination of heirs, claiming he was one of her next of kin under Montana's laws of succession. Because of his claim he asserted he had the right to notice of the adjudication of intestacy.

The district court ruled he was not next of kin under Montana's laws of succession and was therefore not entitled to notice of the probate of Helen's estate.

We agree.

Lawrence does not contend he is entitled to inherit all of Helen's estate, to the exclusion of her cousins. Rather, he contends under the common law doctrine of "ancestral succession", he is entitled to inherit that portion of her estate which came to her when her husband Raymond died. He contends he should be allowed to trace this property.

The sole issue here is whether Lawrence Brewington, as the brother of Helen Brewington's predeceased husband, Raymond

Brewington, is "next of kin" under section 91A-2-103, R.C.M. 1947, and therefore entitled to inherit part of Helen Brewington's estate.

Under the common law doctrine of ancestral succession, property reverted to the line of family from which property was descended or devised. Because "next of kin" is not defined in the Montana version of the Uniform Probate Code, and the doctrine of ancestral succession has not expressly been abrogated by statute or overruled by court decision, Lawrence argues that collateral relatives of a predeceased spouse should be included among next of kin as to property which descended from that spouse.

Lawrence refers this Court to annotations under former Section 91-403, R.C.M. 1947, (repealed Laws 1974) which governed succession to an intestate estate. It is important to note, however, that none of the cases cited under this statute held that relatives by affinity, other than a spouse, could inherit from an intestate. In fact, the laws of Montana indicate the contrary.

In the earliest territorial laws of Montana, it is true relatives of a predeceased spouse inherited by law the estate of a decedent who died intestate leaving no relatives of his own. Sec. 254, Cod. Stat. 1871, p. 362. Even under that statute, however, cousins of an intestate fell under the category of "paternal or maternal kindred" and preempted the rights of the relatives of the predeceased spouse. That statute was expressly repealed by Sec. 558, Laws of 1877, p. 370.

All later statutory enactments indicate "next of kin" or "kindred" was never intended to include relatives by affinity as those who would inherit under the laws of intestate succession. In 1877, the laws of succession included for the first time the words "next of kin". Sec. 534, p. 365, Sixth Clause, read:

> "If the decedent leave no issue, nor husband, nor wife, and no father, nor mother, nor brother, nor sister, the estate must go to the next of

kin, in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claimed through the nearest ancestors must be preferred to those claiming through an ancestor more remote * * *."

"Kindred" was then defined in terms of ancestors, and therefore, blood relatives. Sec. 538 and Sec. 539, Laws of 1877, pp. 366-367, provide:

"Sec. 538. The degree of kindred is established by the number of generations, and each generation is called a degree.

"Sec. 539. The series of degrees forms the line; the series of degrees between persons who descend from one another, is called direct or lineal consanquinity; and the series of degrees between persons who do not descend from one another, but spring from a common ancestor, is called the collateral line, or collateral consanquinity."

It is significant that in none of these succession statutes is there reference to relatives by affinity. Sec. 543, Laws of 1877, the original statute regarding blood line descent, in fact preferred whole blood relatives to half-blood relatives:

"Sec. 543. Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance."

A notable exception to the preference to blood relatives in the scheme of inheritance is the right of adopted children to inherit in the same manner as natural children. However, this right was created especially by statute and did not exist previously under common law.

The 1877 statutes on intestate succession were reenacted in essentially the same form (sections 91-403, 91-407 through 91-411, R.C.M. 1947) and were effective up to the adoption of the Montana Uniform Probate Code in 1974. Even the new code incorporates much of the same language, including section 91A-2-103, R.C.M. 1947, which reads in pertinent part:

-4-

> "Share of heirs other than surviving spouse.
> The part of the intestate estate not passing to
> the surviving spouse under section 91A-2-102, or
> the entire intestate estate if there is no sur-
> viving spouse, passes as follows:
>
> " * * *
>
> "(5)  if there is no surviving issue, parent,
> brother, sister, or children or grandchildren of
> a deceased brother or sister, to the next of kin,
> in equal degree, except that where there are two
> (2) or more collateral kindred, in equal degree,
> but claiming through different ancestors, those
> who claim through the nearer ancestors must be
> preferred to those claiming through an ancestor
> more remote."

A simple reading of this statute indicates relatives by affinity are

not explicitly included as "next of kin" under this statute.  The

new code, Title 91A, does not include provisions regarding "kindred".

In absence of such provisions, this Court adopts the interpretation

of "kindred" under the former laws.

In a case supporting this restricted definition, In re

Bernheim's Estate, 82 Mont. 198, 208, 266 P. 378, 57 A.L.R. 1169,

Anno., 5 ALR3d 715, 717, the Court held that the word "relatives"

in a will included only relatives by blood unless words to the con-

trary are expressed:

> "The word 'relatives' has two meanings:   (1)
> an enlarged meaning which includes all persons
> who are related in any way, by consanquinity
> or affinity, lineal and collateral relatives;
> (2) a restricted meaning which is confined to
> such relatives as are heirs, under the law of
> succession.  It is the universal holding that,
> when used in a will, the word is presumed to
> mean relatives in the restricted sense, unless
> a contrary intention is apparent from the con-
> text of the will."   82 Mont. 208.

Although Bernheim revolved around the wording of a will, it did

confine "relatives * * * under the law of succession" to those

related to a decedent by consanquinity and not affinity, and there-

fore, is pertinent here.

Cases cited in support of the argument for the rights

of blood relatives of a predeceased spouse are based on statutes

to that effect, and in at least half of the cited jurisdictions, these statutes have been repealed.  The trend is definitely towards eliminating the rights of such relatives.

Lawrence correctly states the "law favors one's own blood relatives as the natural object of one's bounty".  He does not allege, however, that he was entitled to priority over his brother's wife on the death of his brother 20 years ago, and by statute, Raymond's "bounty" passed in full to Helen at that time.  Raymond's estate should not be open to new claims 20 years later.

Lawrence also argues that in equity less distant relatives through marriage should receive the benefit of an estate over more distant cousins by blood.  In this connection, this Court recognizes the general comments of the Uniform Probate Code, 8 U.L.A. Probate--Intestate Succession, pp. 322, 323:

> "While the prescribed patterns may strike some as rules of law which may in some cases defeat intent of a decedent, this is true of every statute of this type.  In assessing the changes it must therefore be borne in mind that the decedent may always choose a different rule by executing a will."

Moreover, as the district court stated in its denial of Lawrence's request, if the laws of intestate succession work to the detriment of certain classes of individuals, it is for the legislature, and not the courts, to rectify.

We conclude that blood relatives of a predeceased spouse are not next of kin of the spouse last to die, and Lawrence has no claim to a portion of Helen Brewington's estate.

While we do not discuss the argument that assets from Raymond's estate are no longer identifiable, we note in most cases it would be extremely unlikely they would be identifiable after a passage of 20 years.

We affirm the district court order.

Daniel J. Shea
                    Justice

-6-

We Concur:

_____
Chief Justice

_____
_____
_____
Justices