No. 87-41

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

WADE J. DAHOOD, Personal Representative
of the Estate of ROSE M. McEWAN, Deceased,

Plaintiff and Respondent,

-vs-

MARY ANN FRANKOVICH, ROSE SCHLOSSER, HELEN
DASOVICH, STEVE FRANKOVICH, MARY ANN RILEY,
CATHY PARKS, CHARLOTTE CUTLER, JOANNE SIRGINSON,
et al.,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. McKeon argued, Anaconda, Montana
Cok & Wheat; Michael E Wheat argued, Bozeman, Montana
Leonard J. Haxby argued, Butte, Montana
Johnson, Skakles & Kebe; Greg J. Skakles argued,
Anaconda, Montana

For Respondent:

Poore, Roth & Robinson; Richard Orizotti argued,
Butte, Montana
Knight, Dahood, McLean & Everett; David M. McLean,
Anaconda, Montana
Howard Hedrick, Portland, Oregon

---

Submitted: October 1, 1987

Decided: December 3, 1987

Filed: DEC 3 - 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


This is an appeal from a declaratory judgment entered by the District Court, Third Judicial District, County of Deer Lodge, holding that Mary Cepuran, Joza Vinski and Karl Vinski, were entitled to equal one-third shares of the intestate residue of the estate of Rose M. McEwan, per capita and not by right of representation. We affirm.

Rose M. McEwan died on May 9, 1984. At the time of her death she left a valid will in which, after certain bequests, she left the entire residuary estate to her half brother, Joseph Stokan. The residuary legatee, Joseph Stokan, predeceased Rose M. McEwan, and Joseph left no issue who could take the share of a deceased devisee under § 72-2-512, MCA. Accordingly, because the residuary estate of the decedent Rose M. McEwan is not effectively disposed of by her will, the residuary estate passes under the laws of intestate succession. Section 72-2-201, MCA.

Rose M. McEwan herself left no surviving issue, parent, brother, sister, children nor grandchildren of a deceased brother or sister. There are 30 claimants to her residuary estate whose relationships to the decedent Rose M. McEwan we take from an agreed statement of facts to be as follows:

A

Third degree:
Karl Vinski and Joza Vinski, half-brothers, and Mary Cepuran, half-sister to Kata Vinski Stokan, deceased. Rose M. McEwan is the daughter of Kata Vinski Stokan, deceased.

B

Fourth degree:
Ana Prpic (represented in this matter by Mary Ann Johnson) daughter of Rose Vinski, deceased. Rose Vinski was the full sister of Kata Vinski Stokan, the mother of Rose M. McEwan, deceased.

- 2 -

C

Fourth degree:

Ann Angela Laslovich Holleran, Mary Ann Laslovich Puccinelli, and Joseph Matthew Laslovich are the daughters and son of Michael Laslovich, deceased. Michael Laslovich was the full brother of Frank Laslovich, deceased, who was the father of Rose M. McEwan, decedent.

D

Fourth degree:

Helen V. Palakovich, Angela A. Davis, and Anna M. Thompson are daughters of Frank Laslovich, deceased. This Frank Laslovich was the half-brother of Frank Laslovich, deceased, who was the father of Rose M. McEwan, decedent.

E

Fifth degree:

Raymond Hess, Robert Hess, George Hess, Marian Greene and Betty Wyant are the sons and daughters of Mary Hess, deceased. Mary Hess was the daughter of Frank Laslovich, deceased. This Frank Laslovich was a half-brother of Frank Laslovich, deceased, who was the father of Rose M. McEwan, decedent.

F

Fifth degree:

Mary Ann Frankovich, Helen Frankovich Dasovich, Rose Frankovich Schlosser, and Steve Frankovich are the daughters and son of Helen Laslovich Frankovich, deceased. Helen Laslovich Frankovich was the daughter of Blazina Laslovich, deceased. Blazina Laslovich was the half-brother of Frank Laslovich, deceased, the father of Rose M. McEwan, decedent.

G

Sixth degree:

Margaret Zucco Snow is a daughter to Margaret Frankovich Zucco, deceased, who was the daughter of Helen Laslovich Frankovich, deceased. Helen Laslovich Frankovich was the daughter of Blazina Laslovich, deceased. Blazina Laslovich was the half-brother of Frank Laslovich, deceased, who was the father of Rose M. McEwan, decedent.

H

Sixth degree:

Mary Ann Frankovich Riley, Joann Frankovich Sirginson, Charlotte Frankovich Cutler, Ruth Frankovich Mix, Nancy Frankovich Connors, Kathleen Frankovich Parks, Jane Frankovich Hawthorne, Patricia Frankovich Morrison, John Frankovich and

Gary Frankovich are the daughters and sons of Mike Frankovich, deceased. Mike Frankovich was the son of Helen Laslovich Frankovich, deceased. Helen Laslovich Frankovich was the daughter of Blazina Laslovich, deceased. Blazina Laslovich was a half-brother of Frank Laslovich, deceased, who was the father of Rose M. McEwan, decedent.

I

## Application of the half blood statute

Ana Prpic is a full first cousin of the decedent Rose M. McEwan, since Ana's mother Rose Vinski was a full sister of Kata Vinski Stokan, the mother of Rose M. McEwan. Ana Prpic contends, therefore, that as a full first cousin, she is a half-blood relative of the decedent Rose M. McEwan, and that Karlo Vinski, Joza Vinzki, and Mary Cepuran, as half uncles and half aunt to the decedent can only be quarter blood relatives. Thus Ana contends that although the relationship of the half uncles and half aunt is that of third degree, and that of a first cousin is fourth degree, nonetheless the half blood statute should not apply to the half uncles and half aunt since they are not of the half blood. Ana Prpic makes this contention to avoid the application of § 72-2-211, MCA, which provides:

> Kindred of half blood. Relatives of the half blood inherit the same share they would inherit if they were of the whole blood.

Ana Prpic is joined in this contention by Angela Laslovich Holleran, Mary Ann Laslovich Puccinelli and Joseph Matthew Laslovich, who state they too are full first cousins of the deceased Rose M. McEwan. Their father, Mike Laslovich was a full brother of Frank Laslovich, the father of Rose M. McEwan.

Ana Prpic contends that the term "half blood" describes the relationship between children who have one common parent. Genschorck v. Blumer (Kan. 1932), 14 P.2d 722, 725. She

argues that to be half-blood kindred requires establishing a blood line relationship to the decedent produced by either one of the decedent's parents or through the decedent's grandparents. This results in her statement that the 26 claimants who are not full first cousins are only "quarter blood" relatives because they trace a bloodline to Rose M. McEwan through one set of her great grandparents. It is thus that Ana Prpic asks us to interpret § 72-2-211, MCA, in its reference to "the half blood."

Ana Prpic's argument is founded principally on the Official Comments to the Uniform Probate Code. In the Official Comments to Part 2, Intestate Succession, it is stated:

> (2) Inheritance by collateral relatives is limited to grandparents and those descended from grandparents. This simplifies proof of heirship and eliminates will contests by remote relatives.

Official Comments to Part 2, Montana Code Annotated, Volume 6, Title 72, page 18 (1986).

Again, in the Official Comments to § 72-2-203, MCA, it is stated that "in line with modern policy, [it] eliminates more remote relatives tracing through great grandparents." Montana Code Annotated, Part 2, § 72-2-203, Volume 6, Title 72, page 20 (1986).

The elemental contention of Ana Prpic therefore is that the term "half blood" is to be interpreted as she contends, and that this Court should follow in such an interpretation of the Official Comments to the Uniform Probate Code.

Regardless of the Official Comments, however, it is clear that the Montana Legislature, in adopting the Uniform Probate Code, did not incorporate the limitations to intestate distribution contended for by the full first cousins. Section 72-2-203, MCA, provides:

Share of heirs other than surviving spouse. The part of the intestate estate not passing to the surviving spouse under 72-2-202, or the entire intestate estate if there is no surviving spouse, passes as follows:

(1) to the issue of the decedent; if they are all of the same degree of kinship to the decedent, they take equally, but if of unequal degree, then those of more remote degree take by representation;

(2) if there is no surviving issue, to his parent or parents equally;

(3) if there is no surviving issue or parent, to the brothers and sisters and the children or grandchildren of any deceased brother or sister, by representation;

(4) if there is no surviving issue, parent, brother, sister, or children or grandchildren of a deceased brother or sister, to the next of kin in equal degree, except that where there are two or more collateral kindred in equal degree but claiming through different ancestors, those who claim through the nearer ancestors must be preferred to those claiming through an ancestor more remote.

Section 72-2-203 springs from § 2-103 of the Uniform Probate Code; however, subdivision (4) of § 72-2-203, above, is different from subdivision (4) of § 2-103 of the Uniform Probate Code. Montana did not adopt subdivision (4) of § 2-103, Uniform Probate Code. If it had, in the situation of the decedent Rose M. McEwan, her residuary estate would be divided half to the descendants of her paternal grandparents, and half to the descendants of her maternal grandparents.

Under § 72-2-203(4), MCA, above, the residuary estate of Rose M. McEwan, decedent, must go to the "next of kin in equal degree." The term "next of kin" is not defined in our probate code but we have earlier determined that the term

- 6 -

means blood relatives, and not relatives by affinity. Estate of Brewington (1977), 173 Mont. 458, 568 P.2d 133.

Decrees of kindred are computed in accordance with § 72-11-101, -105, inclusive, MCA. Under § 72-11-105, MCA, uncles and aunts are related to the decedent in the third degree, and full first cousins in the fourth degree.

Here, the uncles and aunt, though related in the third degree, are of the half blood. It is at this point that § 72-2-211, MCA, takes over which provides that relatives of the half blood inherit the same share they would inherit if they were of the whole blood.

The adoption by the legislature of § 72-2-211, MCA, represents a change from the statute preceding the Montana Uniform Probate Code as to relatives of the half blood. Former § 91-411, R.C.M. (1947) provided:

> Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise, or gift of someone of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance.

It is significant that former § 91-411, R.C.M. (1947), recognized that the term "half blood" could be applied to heirs without limitation as to a third or fourth degree. Finally, however, the provisions of § 72-2-203(4), MCA, must be read in conjunction with § 72-11-105, MCA. In computing the degrees of kindred, the count is made by generations from the claimant to the common ancestor and then to the decedent. Section 72-11-105, MCA, does not require a "set" of common ancestors in determining the degree of kindred.

The argument in this case therefore of the full first cousins that the term "half blood" in § 72-2-211, MCA, includes only whole blood uncles and aunts of the decedent

and whole blood first cousins of the decedent must fail. First cousins, whether of the whole or the half blood, are not of the same degree of kindred as uncles and aunts of a decedent.

II

## Paternal and Maternal Division

The full cousins Mary Laslovich Puccinella, Ann Angela Laslovich Holleran, and Joseph Matthew Laslovich point out that under the judgment of the District Court the residuary estate of decedent Rose M. McEwan is divided among heirs from the decedent's mother's side of the family whereas the other claimants descend from the father's side of the family and that to exclude the claimants from the father's side in the distribution of the residuary estate is patently unfair.

These cousins look to subdivision (4) of § 72-2-203, MCA, and that portion of it which states that "where there are two or more collateral kindred in equal degree but claiming through different ancestors . . .." Their argument runs that all of the persons here claim through different ancestors who are in equal degree, in other words, the mother and father of Rose M. McEwan. Since the mother and father are each dead, half of the estate descends to the issue of the father and half to the issue of the mother. They contend that this is the only explanation for subsections (1) and (3) of § 72-2-203, providing for distribution by representation whereas distribution of (2) and (4) under the statute provide for division per capita.

If we were to give effect to the argument made by these first cousins, the result would be to restore by interpretation what was refused by the legislature, that is the provisions of the Uniform Probate Code, § 2-103, which call for a division between the paternal and the maternal sides. Since the legislature refused to adopt that kind of

distribution in this situation, we must adhere to § 72-2-203(4), MCA, and determine that the residual estate in this case goes to the next of kin in equal degree, per capita. We see nothing in Estate of Gertrude Brown (1972), 158 Mont. 413, 492 P.2d 914, nor Estate of Ethel E. Evans, (Mont. 1985), 704 P.2d 35, 42 St.Rep. 1047, leading to a different conclusion.

III

## Per Capita and Representation

Mary Ann Frankovich and the remaining claimants listed in paragraph F above are related to the decedent in the fifth degree of kindred. On appeal, their counsel argues that under § 72-2-203, MCA, a proper interpretation requires a distribution of the intestate estate to all next of kin by representation and that such representation is provided for in § 72-2-204, MCA. Counsel further argue from the official comments to the Uniform Probate Code under § 72-2-203, MCA, which stated that "in general the principle of representation is adopted as the pattern which most decedents would prefer." Montana Code Annotated, Part 2, Vol. 6, at 20 (1986).

First, representation is not allowed unless it is "called for by this code" § 72-2-204, MCA, and representation is not called for in subdivisions (2) or (4) of § 72-2-203, MCA.

Moreover, the term "next of kin" in subdivision (4) of § 72-2-203 is limited by the following language "in equal degree."

We interpret that language to mean that in cases where subdivision (4) applies, the intestate estate goes to the next of kin, per capita if necessary, in the nearest equal degree. That interpretation is in accord with many of the states, and further in accord with Official Comments respecting the reasons for the intestate provisions: the

intestacy rule "attempts to reflect the normal desire of the owner of wealth as to the disposition of his property at death" and so the prevailing patterns of wills were looked to in framing the statutory provisions; in addition intestacy rules and procedures give persons of modest means an effective and not prohibitorily expensive estate plan provided by law. Montana Code Annotated, Part 2, Vol. 6, at 18 (1986).

Similarly, briefs filed in behalf of the claimants in paragraph D above, related in the fourth degree, and paragraph E, related in the fifth degree, and those on behalf of the sixth degree relatives contend for distribution by right of representation, and also join in the "quarter blood" argument which we have discussed above. What we have said foregoing is adequate to meet their contentions.

IV

## Conclusion

We determine in this case that the District Court properly interpreted the provisions of Montana's Uniform Probate Code in determining the residuary heirs of the decedent Rose M. McEwan's intestate estate. The declaratory judgment thereupon entered is hereby affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____

- 10 -

_L. C. Gulbrandson_

_William Edwards_

_R. C. McDonough_

Justices